No. 47,879

RALPH C. JOHNSON, *Appellee*, v. SUE M. JOHNSON, *Appellant*.

(547 P. 2d 360)

Opinion filed March 6, 1976.

*Robert T. Cornwell,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause, and *Thomas D. Kitch,* of the same firm, and *Robert M. Bond,* of Bond and Bond, of El Dorado, were with him on the brief for the appellant.

*John P. Woolf,* of Martin, Pringle, Schell & Fair, of Wichita, argued the cause, and *J. Taylor Neuschwander,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal from an order of the district court dismissing the appellant's prior appeal to this court from an order of the district court denying the appellant, among other things, the right to show a fraud upon the judgment of the district court regarding alimony payments in a divorce action.

Doctor Ralph C. Johnson, a dentist, (plaintiff-appellee) and Sue M. Johnson (defendant-appellant) were married on March 7, 1948. Three daughters were born to this marriage. On February 8, 1971, Dr. Johnson filed for divorce. Mrs. Johnson answered and cross-petitioned for divorce. Upon hearing the matter Mrs. Johnson's cross-petition was granted by the trial court on February 23, 1972. The divorce decree, however, took under advisement and reserved

ruling on the question of alimony. On January 12, 1973, a journal entry was filed. The journal entry divided the parties' property and further provided for alimony as follows:

"FOURTH: Plaintiff will pay defendant a monthly alimony payment of one-twelfth ($\frac{1}{12}$) of twenty-five percent (25%) of his adjusted gross income as reported on his federal income tax return for the preceding year. This figure is found in Schedule C of federal Form 1040, usually at line 26 or 27, and identified as 'net profit,' reflecting only the income of Dr. Johnson as a practicing dentist. Income from other sources shall not be considered in arriving at a net profit figure with which the alimony payments are computed. Said alimony plan shall meet the following provisions:

&ast; &ast; &ast; &ast; &ast;

"F. Dr. Johnson shall furnish copies of each federal and state tax return to Sue Johnson within ten (10) days after the filing of the same. If the tax return is acceptable to the Internal Revenue Service it will be and hereby is acceptable to the Court and Mrs. Johnson will not be allowed any annual audits of Dr. Johnson's book or records."

A minimum monthly alimony payment of $500 was agreed upon by the parties.

Based on Dr. Johnson's 1971 tax return of $67,871.92 net taxable income, Mrs. Johnson received slightly over $1,400 a month alimony. Under the 1972 tax return with $42,429.59 net taxable income and $2,388.10 from accident insurance policies Mrs. Johnson's alimony was reduced to $933.70 a month for the months of May 1973 to April 1974. The alimony was reduced in part because Dr. Johnson earned $7,000 less in 1972 than in 1971. Alimony was also reduced because expenses jumped from $56,540.45 in 1971 to $75,002.66 shown on the 1972 tax return.

On April 27, 1973, the appellant sought to have her alimony determined on the basis of gross, not net, income. At the same time the appellant's counsel requested the appellee to answer certain interrogatories which were voluntarily answered in an informal letter. On June 21, 1973, the appellant attempted to take a deposition of Dr. Johnson's accountants. On June 25, 1973, the appellee countered with a motion to quash the taking of the accountants' depositions.

On July 10, 1973, the payment of wages by Dr. Johnson to his daughter and his nurse, rental of his office building, legal and professional fees, and telephone bills were examined at a hearing. Evidence showed the net taxable income for the previous five years was: 1966—$55,615.67; 1967—$50,275.28; 1968—$60,477.23; 1969—$61,135.49; and 1970—$69,806.47. Neither the appellant's evidence nor the evidence of the reduction in net taxable income to $42,-

429.59 in 1972, persuaded the trial court to order the depositions. After finding the provisions requiring approval by the Internal Revenue Service of Dr. Johnson's tax returns to be adequate safeguards, the trial court on July 10, 1973, sustained the appellee's motion to quash the taking of depositions and denied the motion to determine alimony on the basis of gross income.

On August 8, 1973, the appellant filed a notice of appeal to this court. Among other things the statement of points alleged:

". . . [T]he depositions would have been and were very reasonably calculated to lead to the discovery of evidence which would be admissible to show:

"(a) Contemptuous avoidance of prior order of the court by plaintiff.

"(b) Fraud upon the court which would justify setting aside prior judgment or orders of the court.

"(c) An erroneous calculation of net income which would justify either modification of the alimony formula contained in the journal entry of judgment or an adjustment of the alimony to be paid between May 1973 and May of 1974."

After various extensions, on June 11, 1974, the appellee filed a motion to dismiss the appeal. The appellee alleged the dispute was controlled by paragraph 4 (F) of the journal entry reading:

". . . If the tax return is acceptable to the Internal Revenue Service it will be and hereby is acceptable to the Court and Mrs. Johnson will not be allowed any annual audits of Dr. Johnson's books or records."

The appellee further alleged the time for taking an appeal from the January 12, 1973, journal entry ordering alimony had expired long before August 8, 1973.

The trial court after hearing arguments on the matter sustained the motion to dismiss the appeal to the Supreme Court. Appeal was then duly perfected to the Supreme Court from the order of the trial court dismissing the prior appeal.

It must be noted this is not an appeal which reaches the merits of the controversy. Before undertaking a discussion on the procedural point here asserted, it should be noted K. S. A. 1973 Supp. 60-1610 (c) authorized the trial court to make an allowance for future support denominated as alimony based "on a percentage of earnings."

Under what circumstances is it proper for a trial court to dismiss an appeal to the Supreme Court from a final order of the district court?

K. S. A. 60-2102 (a) (4) states that the appellate jurisdiction of the Supreme Court "may be invoked by appeal as a matter of right from. . . . A final decision in any action. . . ." K. S. A.

60-2103 (a) provides that such an appeal must be taken within thirty (30) days from the entry of the judgment. It also provides:

"A party may appeal from a judgment by filing with the clerk of the district court a notice of appeal. Failure of the appellant to take any of the further steps to secure the review of the judgment appealed from does not affect the validity of the appeal, but is ground only for such remedies as are specified in this chapter, or when no remedy is specified, for such action as the supreme court deems appropriate, which may include dismissal of the appeal. If the record on appeal has not been filed with the supreme court, the parties, with the approval of the district court, may dismiss the appeal by stipulation filed in the district court, or that court may dismiss the appeal upon motion and notice by the appellant."

Pursuant to this statutory authority and Supreme Court Rules No. 6 (n) and 6 (p), the Supreme Court has authorized district courts to dismiss appeals if the record on appeal has not been filed with the Supreme Court only by (1) stipulation of the parties, (2) a voluntary notice of dismissal filed by the appellant, or (3) a finding by the trial judge that the appeal has been abandoned. The statute does not provide the district court with authority to dismiss the appeal upon motion of the appellee, except in cases where the appellant has filed a notice of appeal but has failed "to take any of the further steps to secure the review of the judgment appealed from."

If the legislature had intended to give the district court authority to dismiss appeals on the ground that they were filed more than 30 days after the entry of final judgment, it would have done so. In the absence of such a provision, the Supreme Court has the exclusive responsibility of determining whether its jurisdiction has been properly invoked. (See, *St. Francis Mercantile Equity Exchange, Inc. v. Walter,* 211 Kan. 76, 505 P. 2d 775 and cases cited therein.)

The appellee cites cases from other jurisdictions where the district court has exercised an "inherent power" to dismiss cases. But these are cases where the trial court dismissed the case for lack of prosecution, or as groundless, vexatious, or harassing litigation. To recognize a truly effective "inherent power" in the district court to dismiss appeals to the Supreme Court would allow the district court to be the final arbitrator of disputes. A decision of this character would have potential for arbitrary action at the district court level. (See, 20 Am. Jur. 2d, Courts, §§ 78-79.)

Here we are not concerned with an abandonment of the appeal by the appellant, and the district court made no finding that the

appeal had been abandoned. (See, *Cribbs v. Pacific Intermountain Express*, 208 Kan. 813, 494 P. 2d 1142.)

The appellee contends the appellant is appealing from the prohibition of annual audits and the net income alimony formula set forth in the January 12, 1973, journal entry, which appeal was filed more than 30 days after the judgment.

The appeal from the post-trial order of the trial court does not seek review of the alimony provisions contained in the journal entry filed on January 12, 1973, except insofar as it may be construed to bar the post-trial relief sought by the appellant. Actually the appeal from the post-trial order was taken within 30 days from the filing of such order.

Was the post-trial order barring discovery of the books and records utilized by Dr. Johnson in the preparation of Schedule C of his 1972 Federal Income Tax Return and the overruling of Mrs. Johnson's post-trial motion a final order?

The alimony formula and the prohibition of "annual audits" of Dr. Johnson's books and records are provisions of a divorce decree which have become final, but they constitute a set of facts against which the appellant's application for post-trial relief, as well as her efforts to secure evidence in support of such relief, must be tested. Whether the trial court was correct in determining that the relief sought by the appellant was foreclosed by the original decree of divorce is a determination subject to review by the Supreme Court.

It has long been acknowledged that the application of the doctrine of *res judicata* is a proper subject for appellate review, even though an appeal therefrom could always be dismissed on the theory that it had not been taken within 30 days from the entry of the first judgment. (*Taber v. Taber*, 213 Kan. 453, 455, 516 P. 2d 987.)

It is apparent the appellant was seeking post-judgment relief from the trial court on at least three different theories:

"1) Under K. S. A. 60-260 (*b*), which provides in part that '[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party, . . . or (6) any other reason justifying relief from the operation of the judgment. . . .'

"2) Indirect contempt of the court's original judgment by the appellee;

"3) Modification of the alimony provisions of the decree of divorce pursuant to K. S. A. 60-1610 (*c*)."

The appeal from the trial court's order quashing the notice to take depositions and denying Mrs. Johnson's application for post-judgment relief involves two separate but related issues:

"1) The circumstances under which she would be entitled to post-judgment relief; and

"2) The circumstances under which she would be entitled to engage in discovery in support of her application for post-judgment relief."

In dismissing Mrs. Johnson's prior appeal the trial court found the provisions of the journal entry requiring approval by the Internal Revenue Service of Dr. Johnson's tax returns to be adequate safeguards for enforcement of its alimony decree, thereby warranting the prohibition of annual audits of Dr. Johnson's books and records by Mrs. Johnson.

The journal entry providing for alimony payments to Mrs. Johnson, as so construed by the trial court, embraced an abdication by the trial court of its judicial responsibility to enforce the judgment by delegating such responsibility to a federal agency. (See, 46 Am. Jur. 2d, Judgments, § 898; and 49 C. J. S., Judgments, § 228, p. 433.)

Whether this was a proper basis for the trial court's post-trial order is the essence of the prior appeal. By dismissing the prior appeal the appellant was denied the right to pursue evidence which might show improper or fraudulent conduct on the part of the appellee. (See, K. S. A. 60-260 [b].)

Furthermore, K. S. A. 1973 Supp. 60-1610 (c), provides for modification of alimony "at any time, on a hearing with reasonable notice to the party affected." Thus, the fact that more than 30 days have passed since the original entry of judgment did not warrant dismissal of the appeal denying the appellant relief on her motion for modification of the alimony formula.

Accordingly, the judgment of the lower court dismissing the prior appeal is reversed with directions: (1) to reinstate the prior appeal; (2) to order the appellee to counter designate the record and combine the same with the record on appeal herein; and (3) to authorize the appellant to file a brief on the merits of her first appeal.