In Re: The Petition of the City of Shawnee to the County Commissioners of Johnson County, Kansas, for Annexation of Certain Lands, Pursuant to K.S.A. 12-521.

and

No. 56,249

The City of Bonner Springs, Kansas, A Municipal Corporation, *Appellant,* v. The City of Shawnee, Kansas, A Municipal Corporation, *Appellee.*

(687 P.2d 603)

Opinion filed August 13, 1984.

*C. W. Crumpecker, Jr.*, of Swanson, Midgley, Gangwere, Clarke & Kitchin, of Kansas City, Missouri, argued the cause and *Allen R. Slater*, of Olathe, was with him on the brief for appellants Builders Sand Company and Peter E. Powell.

*Charles O. Thomas*, of Weeks, Thomas & Lysaught, Chartered, of Kansas City, argued the cause, and *Peggy Grant-Cobb*, of the same firm, was with him on the brief for appellants James R. Coleman and Golden H. Coleman.

*D. H. Corson, Jr.,* of Corson & Osborn, P.A., of Kansas City, argued the cause, and *Gerald E. Williams,* of Gage & Tucker, of Overland Park, was with him on the briefs for appellant City of Bonner Springs.

*James T. Wiglesworth,* of Rainey & Wiglesworth, of Overland Park, argued the cause, and *Marvin E. Rainey,* and *Kenneth C. Slowinski,* of the same firm, were with him on the briefs for appellee City of Shawnee.

*Philip S. Harness,* assistant county counselor, argued the cause, and *Lyndus A. Henry,* county counselor, was with him on the brief for appellee Board of County Commissioners of Johnson County.

The opinion of the court was delivered by

Cook, District Judge Assigned: These cases arise from the attempts of the City of Shawnee to annex a parcel of land in Johnson County. Case number 55,901 is a direct appeal from Shawnee's original annexation proceedings; the appellants Builders Sand Company, *et al.* are aggrieved landowners in the subject area who were allowed to intervene for the purpose of appeal. Case number 56,249 is a collateral attack on Shawnee's attempted annexation, brought by the City of Bonner Springs as a declaratory judgment action.

The City of Shawnee is a city of the first class, located in Johnson County, on the western edge of the metropolitan Kansas City area. Shawnee presently encompasses 16,753 acres of land with a population of approximately 29,000 people. On December 4, 1980, the City of Shawnee petitioned the Johnson County Board of County Commissioners for an order permitting annexation of approximately 4.7 square miles of land northwest of the city, pursuant to K.S.A. 12-521. Notice to all affected landowners was sent six days later.

The public hearing before the Board of County Commissoners (hereafter the Board) was held in Shawnee on the evening of February 3, 1981. The Board heard testimony from the Shawnee assistant city attorney in support of the proposed annexation, pointing out the services to be provided by the city and the corresponding benefits which would flow to the affected landowners. However, a number of landowners from the target area testified in opposition to the proposed annexation. They highlighted the adequacy of public services already provided to the area by Johnson County, Monticello Township, and other governmental units; they also focused on the shortcomings of Shawnee's proposed services, the city's questionable financial ability to meet the increased demands on its resources, and the

burden to be imposed on the landowners through doubling the ad valorem tax.

The Board met in regular session to consider Shawnee's petition on April 13, 1981. Upon reviewing the record and fully discussing the proposal, the Board unanimously denied Shawnee's request. The minutes of that meeting read in pertinent part:

"RESOLUTION No. 033-81

". . . .

"WHEREAS, the Board is of the opinion that the granting of the Petitioner's request at this time would result in obvious impairment of the real estate involved in that the landowners sought to be annexed would not share within a reasonable time the municipal services and benefits now accorded to the landowners in other portions of the municipality upon a footing of substantial equality, and

"WHEREAS, the Board is of the opinion that at this time the evidence has not shown the necessity for and expediency of annexation and the granting of Petitioner's request would cause manifest injury to the landowners involved.

. . . .

ORDER

. . . .

"The Board having heard testimony as to the advisability of annexing the above described property at a public hearing . . . and having examined its files is satisfied that annexation of such property to the City of Shawnee will cause manifest injury to the owners of such land, and hereby orders that the Petition of the City of Shawnee is denied."

Shawnee appealed the Board's denial to the district court of Johnson County, pursuant to K.S.A. 12-521, on April 30, 1981. The appeal lay dormant until September 1 of that year when a motion to intervene was filed by a number of landowners not parties to this appeal. The trial court allowed their intervention on September 18, 1981.

Nothing else was done with the case until April 23, 1982, when the trial court granted Shawnee's ex parte motion to remove the appeal from a list of cases scheduled for dismissal for lack of prosecution. Pretrial conference was held June 25, 1982, and the pretrial order was entered July 13. In the pretrial order, counsel for the respective parties stipulated as to the scope of judicial review and the evidence on which the court's decision would be based. The trial judge determined the case should be held in abeyance pending our decision in *In re Appeal of City of Lenexa*, 232 Kan. 568, 657 P.2d 47 (1983), because of the similar

issues of law present in each. Our decision in that case was handed down January 14, 1983.

For three months following our decision, no further action was taken on Shawnee's appeal. During this time the City of Bonner Springs, in neighboring Wyandotte County, contacted several landowners in the target area regarding voluntary annexation of their land into that city. In an attempt to develop an industrial park, Bonner Springs sought to acquire approximately 300 acres of the 4.7 square miles which had previously been denied Shawnee by the Johnson County Board. Bonner Springs promised to provide grant money to extend into the area essential services including water, sewers, and roads; the city advised the landowners the federal government had already authorized $325,000.00 to build water and sewer lines, and that Bonner Springs was applying for an additional $100,000.00 for roads. On April 11, 1983, these landowners petitioned for and consented to annexation of their land by Bonner Springs pursuant to K.S.A. 12-520(g). That same day Bonner Springs passed, published and filed the ordinances required to annex these lands.

Upon learning of Bonner Springs' annexation, the City of Shawnee and the Johnson County Board of County Commissioners quickly moved to revive Shawnee's attempted annexation. The following day, April 12, Shawnee presented a second petition to the Board requesting an order authorizing annexation of the entire area previously sought, including that portion now annexed by Bonner Springs. Shawnee submitted this second petition to the Board notwithstanding its appeal then pending in the Johnson County district court. On April 22, 1983, Shawnee once again petitioned the court to remove its appeal from a dismissal list; the court granted the motion and set the case for pretrial conference. Three days later the court allowed the landowners who intervened in 1981 to withdraw from the case, leaving the City of Shawnee and the Johnson County Board of County Commissioners as the only parties to the appeal. The next day, April 26, 1983, the attorney for the City of Shawnee moved the district court to delete the land owned by the withdrawn intervenors from the area sought to be annexed by Shawnee's petition. The trial court ordered the deletion as requested, which was approved by attorneys for both Shawnee and the Board.

That very day, April 26, counsel for the City of Shawnee and counsel for the Board entered into a stipulation stating that:

1.) Shawnee will immediately provide a number of public services to the target area which will constitute material and compensating benefits;
2.) the increase in ad valorem tax resulting from annexation will be less than these compensating benefits;
3.) the annexation will *not* cause manifest injury to the landowners, and therefore should have been granted by the Board; and
4.) the Board's April, 1981, order denying annexation is not supported by substantial evidence presented at the public hearings and therefore is unreasonable.

This stipulation was submitted to the district court, along with an agreed journal entry, on the same day they were entered into. Judge Bradley's General Benchnote Entry of April 26, 1983, reads:

"Per stipulation and agreed journal entry [defendant Board's] Resolution No. 033-81 of 4/13/81 denying annexation of certain described lands (not herein before deleted by order) found not supported by substantial evidence [and] therefore unreasonable, arbitrary [and] capricious."

The journal entry of the same date, agreed to by the parties and signed by the judge, repeated the substance of the stipulation along with the court's order permitting Shawnee to annex the land. None of the affected landowners were notified of these steps, and none were represented before the court on April 26. The journal entry was filed on May 2, 1983.

Thirty days later, on June 2, 1983, the City of Shawnee annexed the subject land by Ordinance No. 1589. That same day an article was published in the *Kansas City Star* newspaper concerning the Bonner Springs/Shawnee dispute. The article reveals what happened, or to be more precise what failed to happen, during the thirty days following Judge Bradley's order. In part the article states:

"Officials in Shawnee and Johnson County hope a recent court decision will squelch a claim by Bonner Springs to 300 acres of Johnson County land.
. . . . .
"A court order, issued April 26 by Johnson County District Judge James H. Bradley, upheld the attempt Shawnee made two years ago to annex about four square miles, including the land Bonner Springs wants . . . .
"According to Johnson County Commissioner Bob Bacon, Judge Bradley's

decision was issued after the county hurriedly changed its position to prevent the 300 acres from going to Bonner Springs.

"Mr. Bacon said the commission was not informed of Judge Bradley's decision for nearly a month after it was issued. He said the decision was kept quiet until the 30-day appeal period ran out.

"Marvin Rainey, Shawnee city attorney, said officials were not trying to hide the decision but 'we didn't take any steps to publicize it.' He said some of the affected landowners could have petitioned to intervene in the case and if successful they then could have appealed Judge Bradley's decision."

One week later, on June 9, 1983, the City of Shawnee sent a form letter to the landowners of the area annexed. After reviewing the facts surrounding passage of Shawnee's ordinance, the letter states:

"Following a hearing in March, 1981, the Board of County Commissioners denied the city's request for annexation. The City of Shawnee appealed that decision to the District Court of Johnson County, Kansas, and that Court has now entered its order permitting the annexation by the city.

"The City of Shawnee again petitioned the County Commissioners on April 8, 1983, to annex substantially the same area. A hearing on that petition has been scheduled by the Board of County Commissioners for June 14th. Since it now appears that the hearing on the second petition will not be necessary, the Board of County Commissioners has, at the request of the city, cancelled the hearing which was set for June 14th.

"The City of Shawnee has taken the necessary steps to begin the delivery of city services to your area. This includes police, fire, street maintenance, and other city services. The Monticello Fire District will continue to provide service to you in conjunction with the Shawnee Fire Department."

Thereafter began the steps ultimately leading to these two appeals. In case number 55,901, Shawnee's direct appeal from the Board's denial of annexation, a motion to intervene was filed June 14, 1983, by appellants Builders Sand Company, Peter Powell, and James and Golden Coleman, some of the consenting landowners of the 300 acres previously annexed by Bonner Springs. They premised their motion to intervene on the assertion their interests were not adequately represented by the Board which, without authority or notice to the landowners, arbitrarily entered into the stipulation misrepresenting the effect of Shawnee's proposed annexation on landowners' interests, and that the landowners first received notice of the district court's order through the *Kansas City Star* article on June 2. The landowners also filed a motion for relief from the court's May 2, 1983, order pursuant to K.S.A. 60-260, and a motion for leave to file an appeal from that order pursuant to K.S.A. 60-2103. Other

landowners not present in this appeal filed similar motions. A hearing on appellants' motions was held before Judge Bradley on June 20, 1983. At the close of that hearing, he denied relief from his earlier judgment under K.S.A. 60-260, but allowed appellants to intervene for the purpose of perfecting this appeal from the May 2 order. The journal entry permitting intervention and appeal was filed July 12, 1983. The landowners' notice of appeal was filed in the Court of Appeals two days later.

In case number 56,249, the City of Bonner Springs filed its declaratory judgment action against the City of Shawnee and the Johnson County Board on June 9, 1983, one week after Shawnee's attempted annexation of the subject land. The petition set forth the facts surrounding Bonner Springs' earlier annexation of the land by the landowners' consent, as well as Shawnee's subsequent attempt to annex the same land, and prayed for a determination of the validity of Shawnee's ordinances. Counsel for Bonner Springs later consented to dismissal of the Johnson County Board of County Commissioners on grounds it was not a necessary party to the lawsuit. Upon motion of the City of Shawnee, on October 17, 1983, the court dismissed Bonner Springs' suit for failure to state a claim upon which relief can be granted, concluding that Bonner Springs lacked standing to challenge Shawnee's proposed annexation. Bonner Springs' notice of appeal was filed with the Court of Appeals on October 28, 1983.

The landowners appealing in No. 55,901 moved to transfer their case from the Court of Appeals to the Supreme Court on July 14, 1983. This motion was granted, and the case transferred, on July 20. A similar motion by the City of Bonner Springs was granted November 21, 1983. Bonner Springs' motion for consolidation of the two cases on appeal was granted by this court on December 19, 1983.

In this appeal a host of issues are raised inasmuch as the parties do not entirely agree on the questions presented. A distillation of the briefs in No. 55,901 reveals the following issues must be addressed to resolve the appeal: whether this Court has jurisdiction over the appeal under K.S.A. 60-2103(a); whether the Board had authority to enter into the joint stipulation with Shawnee; whether the district court erred by considering the stipulation entered between Shawnee and the Johnson County Board; whether the court erred in deleting portions of

land from Shawnee's original petition; whether the Board properly denied Shawnee's petition in April, 1981; and the proper remedy, if any, to be afforded on appeal. In No. 56,249, Bonner Springs' declaratory judgment action against Shawnee, the primary questions are whether Bonner Springs' petition sufficiently states a claim upon which relief can be granted, and whether Bonner Springs has standing to collaterally attack the validity of Shawnee's annexation ordinance.

The first issue raised by appellee, Johnson County Board of County Commissioners, which must be addressed is whether this court has jurisdiction of the appeal in No. 55,901. More specifically, the Board contends the landowners' notice of appeal was not timely filed under K.S.A. 60-2103(a), and the appeal should therefore be dismissed. This issue was earlier raised in a joint motion to dismiss the appeal filed by Shawnee and the Board on December 7, 1983, which was denied by this court on December 19 with leave to renew at time of oral argument.

The right to an appeal in this state is strictly statutory in nature. *Brinson v. School District*, 223 Kan. 465, Syl. ¶ 1, 576 P.2d 602 (1978). K.S.A. 60-2103(a) provides in part:

"When an appeal is permitted by law from a district court to an appellate court, the time within which an appeal may be taken shall be thirty (30) days from the entry of the judgment, as provided by K.S.A. 60-258, except that upon a showing of excusable neglect based on a failure of a party to learn of the entry of judgment the district court in any action may extend the time for appeal not exceeding thirty (30) days from the expiration of the original time herein prescribed. The running of the time for appeal is terminated by a timely motion made pursuant to any of the rules hereinafter enumerated, and the full time for appeal fixed in this subsection commences to run and is to be computed from the entry of any of the following orders made upon a timely motion under such rules: Granting or denying a motion for judgment under subsection (b) of K.S.A. 60-250; or granting or denying a motion under subsection (b) of K.S.A. 60-252 to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; or granting or denying a motion under K.S.A. 60-259 to alter or amend the judgment; or denying a motion for new trial under K.S.A. 60-259."

The trial court's order permitting Shawnee to annex the land in question was entered May 2, 1983. The thirty-day appeal period expired June 2, 1983, the day Shawnee passed its annexation ordinance. Appellants, Builders Sand Company, *et al.*, made none of the motions identified in 60-2103(a) as terminating the time for appeal. However, the district court found that

"[B]ecause the [appellants] were not notified and had no knowledge that their interests in the litigation were not being protected by the Board, they should be allowed leave to file an appeal from this Court's judgment of April 26, 1983, as set forth in the Journal Entry of May 2, 1983, on the grounds of excusable neglect, as provided by K.S.A. 60-2103."

The appellee Board contends the district court was without statutory authority to make such a finding because the landowners were not parties to the case when the May 2 judgment was entered and were not entitled to notice thereof; therefore their failure to file an appeal within thirty days afterwards was not due to anyone's "neglect."

Did the district court err in permitting the appellant landowners to intervene for the purpose of filing an appeal from its judgment of May 2, 1983? The *right* to intervene under K.S.A. 60-224(*a*) depends on the concurrence of three factors: (1) timely application; (2) a substantial interest in the subject matter; and (3) lack of adequate representation of the intervenor's interest. *Rawlins v. Stanley,* 207 Kan. 564, 567, 486 P.2d 840 (1971).

The Board's assertion that appellants were not entitled to the protections of K.S.A. 60-2103 because they never sought to intervene prior to the district court's judgment of May 2, 1983, and were not entitled to notice thereof, ignores the fact that appellants had no legal *right* to intervene under K.S.A. 60-224(*a*) so long as their rights were being adequately represented or until they had knowledge they were not being adequately represented by an existing party. It should be remembered that the landowners were not aggrieved by the Board's decision in denying Shawnee's attempted annexation and were not, therefore, proper parties to initiate an appeal to the district court under K.S.A. 12-521. In fact, notice to them of the city's appeal was not required under the statute. It was the Board, not the landowners, which was the proper respondent and it was the duty of the Board to defend its order denying the petition for annexation and protect the interests of the affected landowners. *Board of Johnson County Comm'rs v. City of Lenexa,* 230 Kan. 632, 640-41, 640 P.2d 1212 (1982). The Board knew, or should have known, that in the normal course of events the landowners affected by the annexation appeal would not receive timely notice of any court action unless notified by Shawnee or the Board.

For over two years the Board acted in apparent good faith to

defend against Shawnee's appeal. It defended its denial of the attempted annexation and adequately represented the interests of appellants and other affected landowners until it learned of Bonner Springs' annexation of a portion of the same land. During those two years appellants had every reason to believe their rights were being adequately protected by the Board and, thus, no reason to attempt intervention. The record is entirely void of any evidence to suggest appellants should not have relied on the apparent adversary relationship between Shawnee and the Board prior to receiving actual knowledge to the contrary.

We have previously held the provisions of K.S.A. 60-224(*a*) should be liberally construed in favor of intervention. *Campbell American Legion v. Wade,* 210 Kan. 537, 540, 502 P.2d 773 (1972). This is especially true where intervention is necessary to protect some right which cannot otherwise be protected, including the right of appeal. *Hukle v. City of Kansas City,* 212 Kan. 627, Syl. ¶ 4, 512 P.2d 457 (1973).

One of the requirements of intervention is that it be timely. The requirement of "timely application" as used in K.S.A. 60-224(*a*), however, has no application until such time as adequate representation ceases. *Hukle,* 212 Kan. 627, Syl. ¶ 3. There can be little dispute as to appellants' timely action. They first learned of the Board's changed position and Judge Bradley's decision on or after June 2, 1983, the date of publication of the *Kansas City Star* newspaper article. Their motion to intervene and for relief from the judgment under K.S.A. 60-260 was filed twelve days later, on June 14, 1983. We conclude that the three factors necessary for intervention under K.S.A. 60-224(*a*) were present when appellants' timely motion was filed on June 14, and that the trial court did not err in granting intervention.

Appellants' motion for relief from the final judgment was heard along with the motion to intervene on June 20, 1983. The trial court not only had jurisdiction to grant the motion to intervene, but also authority to grant relief from the final judgment for any of the reasons set forth in K.S.A. 60-260(*b*). The filing of a motion under K.S.A. 60-260 created in the district court jurisdiction to determine the rights of the parties in regard to the matters set forth in the motion. *Daniels v. Chaffee,* 230 Kan. 32, 43, 630 P.2d 1090 (1981). These broad discretionary powers were discussed both in *Daniels* and in *Wichita City Teachers Credit*

*Union v. Rider,* 203 Kan. 552, 456 P.2d 42 (1969). In *Rider* the court held:

"Under the provisions of K.S.A. 60-260(*c*) and 60-260(*b*)(6) a trial court retains broad discretionary power to relieve a party from final judgment for any reason justifying relief from the operation of the judgment if such power is exercised prior to the time for docketing an appeal from the judgment in the supreme court." 203 Kan. at 556.

The Board's challenge of appellate jurisdiction is based on the erroneous supposition that intervenors' notice of appeal should have been filed within thirty days of the May 2 entry of judgment. The record, however, clearly indicates intervenors' appeal was taken *both* from the trial court's May 2 judgment *and* from its June 20 denial of their 60-260(*b*) motion for relief from the final judgment. The notice of appeal was filed on July 14, 1983, which was twenty-four days after the denial for relief from judgment. This was well within the statutory thirty days provided by 60-2103(*a*). The fact that more than thirty days had passed since the original entry of judgment is not grounds to defeat the appeal. *Johnson v. Johnson,* 219 Kan. 190, 547 P.2d 360 (1976).

We must next consider whether the trial court erred in refusing to grant relief under K.S.A. 60-260(*b*). Included in this consideration are the following questions: (1) Did the Board have authority to reconsider and modify its prior denial of the annexation petition during the pendency of the appeal; (2) was that power, if it existed, properly exercised; (3) was the trial court authorized to enter judgment upon the stipulation of the parties; and (4) are the appellant landowners entitled to relief from either the action of the Board or the judgment of the court entered pursuant to the stipulation?

Subject to constitutional home rule powers, governmental agencies and corporations, including municipal corporations, are creatures of the legislature and have only such authority as is granted by that body. *Kansas Power & Light Co. v. City of Great Bend,* 172 Kan. 126, Syl. ¶ 1, 238 P.2d 544 (1951). The authority of a municipality to annex territory under K.S.A. 12-520(*g*) or to petition the board of county commissioners for annexation under 12-521 requires substantial compliance with the provisions of the statute. *Sabatini v. Jayhawk Construction Co.,* 214 Kan. 408, 411-12, 520 P.2d 1230 (1974). In recognizing this principle, we have held the failure of a city to comply with requirements of the legislative enactment which gave it the power and authority to

annex territory nullifies the attempted annexation ordinance. *State, ex rel., v. City of Topeka*, 173 Kan. 387, 246 P.2d 250 (1952); *Brown v. Junction City*, 122 Kan. 190, 251 Pac. 726 (1926). Substantial compliance simply means compliance consistent with the purpose of the statute. *Clarke v. City of Wichita*, 218 Kan. 334, 348, 543 P.2d 973 (1975).

County commissioners likewise have only such powers as are conferred by statute. *Cunningham v. Blythe*, 155 Kan. 689, 694, 127 P.2d 489 (1942). Jurisdiction has been conferred upon them by the express provisions of K.S.A. 12-521 to determine, upon proper petition, whether a given annexation petition is advisable and whether it will cause manifest injury to the persons owning real estate in the territory sought to be added. *In re Appeal of City of Lenexa*, 232 Kan. 568, 575, 657 P.2d 47 (1983). A board of county commissioners has no jurisdiction to act upon a petition for annexation except in substantial compliance with the language and purpose of the statute. K.S.A. 12-521, after detailing the requirements for contents of the petition, date of the public hearing and notice to the affected landowners, provides:

"On the day set for hearing, the board of county commissioners shall hear testimony as to the advisability of such annexation, and a representative of the city shall present the city's proposal for annexation, including the plan of the city for the extension of services to the area proposed to be annexed.

"If said board shall be satisfied that such annexation or the annexation of a lesser amount of such land will cause no manifest injury to such owners, they shall so find and grant the annexation by order; and thereupon the city may annex the land by ordinance. All orders of the board of county commissioners granting or denying petitions for annexation shall be spread at length upon the journal of proceedings of said board. The failure of such board to spread an order granting annexation upon the journal shall not invalidate such order.

"Any owner or the city aggrieved by the decision of the board of county commissioners may appeal from the decision of such board to the district court of the same county in the manner and method set forth in K.S.A. 19-223. Any city so appealing shall not be required to execute the bond prescribed therein."

The above statute makes no provision for reconsideration or modification by the board of county commissioners once it has entered its order either granting or denying the petition for annexation and has spread the same upon the journal of proceedings of the board. Can it then be said the legislature intended to convey that authority to the board, especially after an appeal from its decision has been perfected? We think not.

We have found no prior decisions in this state to aid us in

determining whether the legislature intended to confer continuing jurisdiction to a board of county commissioners acting under the provisions of K.S.A. 12-521. We have therefore looked to other authority for assistance. In Am. Jur. 2d we find the following comment:

"In the absence of a statute expressly authorizing rehearing or reconsideration or mere acceptance of the principle that an administrative agency is given such power as a necessary incident of the power to decide, some courts look to the controlling statute as a whole to ascertain, by way of construction, whether power to reopen or reconsider its prior final determination has been conferred upon an administrative agency by implication. . . . [Some] statutes have been construed as not conferring upon particular administrative agencies the power to reopen and reconsider a final decision in view of the nature of the power exercised and the fact that the statute provided for judicial review, in view of [a] provision for finality and judicial review and that the power of revision was not necessary to the performance of the agency's duties or functions, [and] under the rule that the express mention of one thing is the implied exclusion of another . . . ." 2 Am. Jur. 2d, Administrative Law § 523.

We also have applied the maxim *"expressio unius est exclusio alterius"* when the meaning of a statute is clear and unambiguous. *Tresner v. Rees,* 154 Kan. 581, 119 P.2d 511 (1941). To depart from the clear meaning expressed by statutory language is to alter the statutes, to legislate and not to interpret. *Young v. Regents of State University,* 87 Kan. 239, 124 Pac. 150 (1912).

The language of K.S.A. 12-521 is free from ambiguity. It prescribes when and in what form an annexation petition may be filed, fixes the time for public hearing, provides for the type and manner of notice to affected landowners, and prescribes the method for hearing testimony and entering a final order. The only relief provided for is the right of appeal by the aggrieved party which, under K.S.A. 19-223, must be filed "within thirty days after the making of such" decision by the board. The right of appeal implies a final order which is no longer open for rehearing or reconsideration by the administrative body:

"Even apart from any statutory provision expressly authorizing modification, administrative determinations are subject to reconsideration and change where they have not passed beyond the control of the administrative agency, as where the determinations are not final, but interlocutory, incomplete, provisional, or not yet effective, or where the powers and jurisdiction of the administrative agency are continuing in nature. While a proceeding is pending before a tribunal, there is no limit to the power of such tribunal to review any rulings it may have made, or to permit a reargument upon any proposition involved. When the jurisdiction of the administrative agency has terminated, there is no longer any power to

reconsider or change the determination, and even a statutory provision for continuing jurisdiction may be held to end when the matter is no longer pending before the agency." 2 Am. Jur. 2d, Administrative Law § 522, pp. 331-32.

In carrying out its functions under K.S.A. 12-521, a board of county commissioners acts in both a legislative capacity (determining advisability of the petition) and a quasi-judicial capacity (determining whether manifest injury will result). *In re Appeal of City of Lenexa,* 232 Kan. 568, Syl. ¶ 1. We have recognized that a trial court, while retaining broad discretionary power to reexamine its rulings, must act prior to the time an appeal from a final judgment has been docketed in the appellate court; otherwise the trial court loses jurisdiction to reconsider or change its prior ruling during the pendency of the appeal. *Wichita City Teachers Credit Union v. Rider,* 203 Kan. at 556; *Martin v. Martin,* 5 Kan. App. 2d 670, 623 P.2d 527, *rev. denied* 229 Kan. 670 (1981). We see no reason why the same rule should not apply to an administrative board when acting in a quasi-judicial capacity. The purpose of an appeal is the same whether it be from a judgment of a district court or an administrative agency. As was stated in *In re Estate of Corson,* 226 Kan. 673, 602 P.2d 1320 (1979):

" 'Appeal' is defined by Black's Law Dictionary 124 (4th ed. rev. 1968) as the 'complaint to a superior court of an injustice done or error committed by an inferior one, whose judgment or decision the court above is called upon to correct or reverse.' The scope of review afforded to proceedings varies by statute - but inherent in any appeal is a higher tribunal taking jurisdiction of a matter from a lower tribunal. On appeal the case moves through the courts vertically, never horizontally; that is no appeal lies from one district magistrate to another district magistrate or from one district judge to another district judge. When a case is appealed, the appealing party is seeking to leave the court that has offended him and seeking the righting of the wrong in a different and higher court." 226 Kan. at 676.

We hold, therefore, that when an administrative board acts in a quasi-judicial capacity, as in the instant case, and enters a final order or judgment, its jurisdiction to reconsider or change such order or judgment ceases from and after the time a valid appeal has been perfected; the jurisdiction of the board remains suspended during the pendency of the appeal. A final order or judgment is one which finally decides and disposes of the merits of the proceeding, and reserves no further question, or direction, for the future or further action of the administrative board.

*Connell v. State Highway Commission,* 192 Kan. 371, 373-74, 388 P.2d 637 (1964).

Having determined that the Board lost jurisdiction to reconsider and change its final order of April 13, 1981, denying Shawnee's petition for annexation after the city's appeal was filed with the district court of Johnson County, and during the pendency of the appeal, it follows that the Board's later attempt to grant the petition by means of a joint stipulation filed with the district court is void for lack of jurisdiction. The Board's action was an apparent attempt to do indirectly what it was without authority to do directly. We find that neither the Board nor its attorney had authority to enter into a stipulation which stated the proposed annexation, previously denied by the Board, would not cause manifest injury to landowners and should have been granted because the order denying annexation was not supported by substantial evidence. As previously stated herein, the Board's duty was to defend its prior order and protect the rights of affected landowners. If it had learned during the pendency of the appeal that its prior order was indefensible, the Board was obligated to notify the affected landowners of its desire not to defend against the appeal so that the landowners would have the opportunity to timely intervene and defend, if they so chose. Here the Board not only turned its back on the rights of the landowners but actively conspired with the city against their interests. Regardless of the motive of the Board, we hold it lacked authority to either directly or indirectly grant Shawnee's annexation petition while the case was pending on appeal.

The next issue for determination is whether the trial court erred in considering and acting upon the joint stipulation of Shawnee and the Board.

"A 'stipulation' . . . is an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys, respecting some matter incident thereto. Its purpose is generally stated to be the avoidance of delay, trouble and expense."

"It may be stated as a broad general principle, subject to the limitations hereinafter noted, that matter relating merely to the conduct of a pending proceeding or to the designation of the issues involved therein, which affects only the rights or convenience of the parties thereto and does not involve any interference with the duties and functions of the court, may be the subject of a stipulation. But, as more fully developed elsewhere, parties may not by stipulation invest a court with jurisdiction over the subject matter of a cause which it would not otherwise have had. And clearly, the parties to an action may not stipulate for the determination thereof by the trial court in a manner contrary to

the statutes or rules of court. It is also established that matters affecting the public interest cannot be made the subject of stipulations so as to control the court's action in respect of such matters."

"While, ordinarily, courts are bound by stipulations of litigants, that rule cannot be invoked to bind or circumscribe a court in its determination of questions of law. It has generally been stated that the resolution of questions of law rests upon the court, uninfluenced by stipulations of the parties, and accordingly, virtually all jurisdictions recognize that stipulations as to the law are invalid and ineffective. The same rule applies to legal conclusions arising from stipulated facts. . . . Notwithstanding the right of a party to confer judgment as to demands of certain kinds, it is generally held that a mere stipulation of law as to the validity of a cause of action or defense is invalid. . . .

"The propriety of enforcing the rule against stipulations as to matters of law is especially clear where the case in which the stipulation is made concerns the public." 73 Am. Jur. 2d, Stipulations §§ 1, 4, 5.

The stipulation entered between attorneys for the City of Shawnee and counsel for the Board concludes by stating that the proposed annexation (1) will not cause manifest injury to the landowners, (2) should have been granted by the Board, and (3) the original denial "is not supported by the substantial evidence presented at the public hearings and therefore is unreasonable." The last point, whether the Board's order is reasonable as supported by substantial competent evidence, is quintessentially a matter of law to be determined by the district court under our decision in *In re Appeal of City of Lenexa,* 232 Kan. 568. The Board admits the stipulation contains "mixed findings of fact, opinions and conclusions of law." Furthermore, in *Lenexa* we also held it was error (albeit harmless on those facts) for a trial judge to consider evidence other than that offered at the original public hearing before the Board. 232 Kan. at 586-87. For both these reasons, we conclude the district court erred in abdicating to the joint stipulation rather than examining the record to determine whether as a matter of law, (1) the Board acted fraudulently, arbitrarily, or capriciously, (2) the Board's order was supported by substantial evidence, and (3) the Board's action was within the scope of its authority. *In re Appeal of City of Lenexa,* 232 Kan. at 575-76. Clearly, the trial court failed to observe the review requirements and restrictions placed upon it.

We conclude the trial court erred in refusing to grant appellants relief from its May 2, 1983, judgment pursuant to K.S.A. 60-260(*b*)(3), (4) or (6). While the granting of relief from a final judgment under K.S.A. 60-260(*b*) rests in the sound discretion of the district court, the exercise of that discretion requires due

regard for what is just and fair under existing circumstances and the court cannot act in an arbitrary, fanciful or unreasonable manner. *Tyler v. Cowen Construction, Inc.,* 216 Kan. 401, 532 P.2d 1276 (1975); *Reliance Insurance Companies v. Thompson-Hayward Chemical Co.,* 214 Kan. 110, 519 P.2d 730 (1974). Here the court clearly acted outside of its authority by using incorrect standards in determining the validity of an administrative order. That, combined with the misconduct of the Board, compels a finding for appellants on their motion.

The next question is the relief to be afforded from the trial court's error. Should the case be remanded to the lower court with instructions to apply the correct standards of review or can we make the same review and determine the merits of this action without remand?

The standards of review governing administrative law cases such as this were established in *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 436 P.2d 828 (1968):

"A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, the tribunal acted fraudulently, arbitrarily or capriciously, whether the administrative order is substantially supported by evidence, and whether the tribunal's action was within the scope of its authority.

. . . .

"And in reviewing the district court's judgment this court will in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court. [Citations omitted.]." pp. 450-51.

In *Foote,* the district court on appeal reversed the state Board of Healing Arts' revocation of appellee's medical license. After announcing the standards set forth above, our court engaged in an independent and thorough examination of the evidence originally presented before the board. We concluded the board's finding of extreme incompetence on the part of the appellee was supported by substantial evidence, and held that the trial court improperly applied the standards of review by substituting its judgment for that of the board. We reversed the district court's judgment without any remand. *Foote,* 200 Kan. at 454-60.

The standard of review formulated in *Foote* has been repeatedly applied by our court in a variety of administrative law cases, including those involving annexation. See generally cases cited

in 2 Kansas Digest, Administrative Law # 683, pp. 42-43, (West 1984 Supp.)

*Foote* requires us to consider the merits of a case in order to determine whether the district court properly observed the limitations placed upon it. In appropriate circumstances we have not hesitated to reverse a district court's judgment and reinstate an agency determination without remanding the case for further consideration by the lower court. This occurred in *Kansas Dept. of Health & Environment v. Banks,* 230 Kan. 169, 630 P.2d 1131 (1981). There we concluded the district court failed to apply the appropriate review criteria and improperly substituted its judgment for the KDHE; we reversed the lower court's judgment and, without remand, reinstated the agency's denial of a certificate of need. *Banks,* 230 Kan. at 174-75. A similar conclusion was reached in *In re Certif. of Need App. by Community Psychiatric Centers, Inc.,* 234 Kan. 802, 676 P.2d 107 (1984). In that case the lower court also reversed the KDHE denial of a certificate of need. Applying the *Foote* standard of review, we made an independent examination of the record and reversed the district court on the merits, remanding solely for the procedural purpose of entering the appropriate orders rather than for full reconsideration. *Community Psychiatric Centers, Inc.,* 234 Kan. at 806-10.

Where a district court considering an annexation case has failed to apply the appropriate standards of review, we also have addressed the merits of the particular case without the cumbersome step of remand. In *City of Kansas City v. Board of County Commissioners,* 213 Kan. 777, 518 P.2d 403 (1974), the Board failed to give the City sufficient notice of incorporation proceedings. We reversed, without remand, the district court's order which would have permitted incorporation. *Kansas City,* 213 Kan. at 786. Lastly, in *City of Wichita v. Board of Sedgwick County Comm'rs,* 232 Kan. 149, 652 P.2d 717 (1982), the district court concluded that Board action incorporating an area northeast of Wichita was not supported by substantial evidence, and was therefore arbitrary. After applying *Foote,* we held that the trial court erred by substituting its judgment for that of the Board. Without remanding the case, we reversed the lower court, and reinstated the incorporation order of the Board of County Commissioners.

Summarizing these cases, this court, by virtue of *Foote,* is not only entitled but is required to make an independent review of the evidence presented before the agency and the trial court to determine if the district court observed and applied the proper standards. The district court's failure in the present case to apply *any* standards (choosing instead to rule on the basis of the stipulation) is, for these purposes, not materially different than the improper application of *Foote* by the other district courts in the cases cited. A remand here would serve no useful purpose because we are capable of addressing the merits presently, and would be required to make such an inquiry yet again upon any second appeal arising after remand. A remand to the district court would thus place us in no better position to determine the merits of this case in the future, and we would now be hard pressed to justify the unnecessary delay, expense to litigants and drain of judicial resources resulting from such a pointless step.

All parties agree that the scope of judicial review in a K.S.A. 12-521 appeal is governed by *In re Appeal of City of Lenexa,* 232 Kan. 568, 657 P.2d 47 (1983). In that case we said:

"[W]hen a district court is called upon to review the action of the board in determining the judicial issue of manifest injury, the reviewing court is limited to considering whether, as a matter of law, (1) the board acted fraudulently, arbitrarily, or 'capriciously, (2) the board's order is supported by substantial evidence, and (3) the board's action was within the scope of its authority. [Citations omitted.] In reviewing the district court's judgment, this court must first determine whether the district court observed the requirements and restrictions placed upon it, and then make the same review of the Board's action as does the district court. [Citation omitted.]

"The judicial review of the Board's determination of the *advisability* of the annexation, however, is the review of the legislative function. The duty of the district court, and of this court on appeal, is limited to a determination of whether the Board has the statutory authority to enter the order which it made. [Citations omitted.]" *In re Appeal of City of Lenexa,* 232 Kan. at 575-76.

Neither in the landowners' appeal to our court, nor in Shawnee's original appeal to the Johnson County District Court, was any challenge made to the statutory authority of the Board to deny the advisability of Shawnee's proposed annexation. The broad question, rather, is whether the Board erred in its quasi-judicial determination that the landowners in the area sought to be annexed would be manifestly injured by the annexation. Here again no claim is made the Board acted outside the scope of its authority in so ruling. Similarly, there is no allegation of fraud,

and we therefore must determine only (1) whether the Board acted arbitrarily or capriciously, and (2) whether the Board's denial was supported by substantial evidence.

A court's scope of review in determining whether certain action amounts to arbitrary or capricious conduct is limited. The arbitrary and capricious test relates to whether a particular action should have been taken or is justified, such as the reasonableness of an entity's exercise of discretion in reaching a determination or whether the action in question is without foundation in fact. *Pork Motel, Corp. v. Kansas Dept. of Health & Environment*, 234 Kan. 374, 381, 673 P.2d 1126 (1983). We have also stated that arbitrary and capricious conduct is shown where an order of a tribunal is based upon findings not substantially supported by evidence in the record. *In re Certif. of Need App. by Community Psychiatric Centers*, 234 Kan. at 806, citing *Neeley v. Board of Trustees, Policemen's & Firemen's Retirement System*, 212 Kan. 137, Syl. ¶ 3, 510 P.2d 160 (1973). Under these definitions, whether the Board acted arbitrarily and capriciously in denying Shawnee's petition depends entirely on whether its conclusion of manifest injury is based on substantial evidence.

"Substantial evidence" is defined as evidence which possesses both relevance and substance, and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. *Brinson v. School District*, 223 Kan. 465, 473, 576 P.2d 602 (1978). Stated another way, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *Kansas Dept. of Health & Environment v. Banks*, 230 Kan. 169, Syl. ¶ 3. It is not the function of an appellate court to reweigh the evidence; we are concerned only with the evidence which supports the findings below, and not the evidence which might have supported contrary conclusions. *In re Appeal of City of Lenexa*, 232 Kan. at 584. In the context of our annexation statutes, "manifest injury" means imposition of material or substantial burdens upon the landowners without accompanying material or substantial compensating benefits. *In re Appeal of City of Lenexa*, 232 Kan. at 584. If there is substantial evidence in the record supporting the Board's determination of manifest injury, that decision must be affirmed and Shawnee's annexation stricken down.

Shawnee's original petition included a schedule of services which were to be provided the newly annexed area. Shawnee was already providing some fire protection and sanitation services to the area. Police protection was to be extended immediately after annexation. However, water service, sewer lines, street construction and street maintenance services were to be provided only "when required and desired by landowners" or "as needed." Street lights would not be installed until six months after the City received a sufficient petition from residents. The proposed financing for these services is also revealing. The increased ad valorem property tax to be assessed the newly annexed landowners was to partially or fully support police and fire protection, as well as street construction and maintenance. User charges and benefit districts were planned to support sanitation services, water and sewer lines, some street construction and maintenance. Street lights, when installed, were to be financed by the Kansas Power and Light franchise tax. From this schedule it does not appear what new services would be provided the area other than those for which the landowners themselves would be paying.

The Board also had before it the evidence adduced at the February 3, 1981, public hearing. Without attempting to identify the various speakers, the substance of their testimony was as follows:

There was conflicting testimony over whether the target area was in a 100 year or 500 year flood plain, the critical difference being the suitability of the area for the industrial development Shawnee sought. One person pointed out that the city of Kansas City, Missouri, along with the federal government, recently spent $117 million trying to convert a flood plain (which was once farmland such as this area) into a heavy industrial district.

Police protection to the area, presently provided by the Johnson County Sheriff's Office, was to be provided by the City of Shawnee after annexation. But this protection was to be provided by the same number of personnel and equipment currently serving Shawnee, without any increase in resources. The Shawnee police department has forty officers, whereas the Johnson County Sheriff's office has 114. Testimony was received concerning the superior service rendered by the

sheriff's office, as well as the inadequacy of police services even within the present city limits of Shawnee.

Shawnee also proposed to assume responsibility for fire protection presently provided by Monticello Township. While this was predicted to lower the area's fire insurance rating from 9 to 5, again the services were to be provided without any increased cost to the City, using only current resources. Shawnee presently has only six paid firefighters and lacks certain equipment. In one instance they were unable to contain a small fire at a local company; their plan of operation for another section of the city is simply to evacuate the residents in the event of a fire at a nearby plant.

Sewer services to the area are presently afforded by septic tanks; sanitation is by private hauler. Both were to remain the same after annexation, and some argued there was correspondingly no benefit to the area to accrue from annexation. While the county presently has a waste plan, Shawnee has none.

Street construction and maintenance services are currently provided to the area by the Johnson County Highway Department. After annexation Shawnee proposed that streets would be built by developers, with the possible creation of a benefit district; maintenance would be provided by Shawnee. Once again there was testimony highlighting the superiority of county services, and it was pointed out Shawnee's plan made no provision for street lights for the area.

Land use regulation is presently provided by the Johnson County Zoning Board, which has no comprehensive plan for the area. After annexation these services were to be provided by the Shawnee planning and zoning staff, although that staff has only half the number of personnel employed by the county board. The landowners to be annexed would have no way of knowing what zoning classification would be applied to their land as Shawnee's current ordinance contains no provisions for zoning newly annexed land. Further, because those in the area sought to be annexed now work with the county staff, there is no unregulated development occuring which is detrimental to the city.

Water service to the area, presently provided by Rural Water District #3, was to remain the same after annexation

and therefore led to complaints of no benefit. Shawnee had previously refused to provide water to the area because of lack of development.

Recreational facilities as they currently existed in the City of Shawnee would be available to landowners in the area.

Ad valorem property taxes, now $7.69 per $1,000 valuation for the area, were to more than double to $15.51 per $1,000 after annexation, but the City contended this would be offset by the better fire rating flowing from annexation. This prompted the observation that the lower fire rating is of little benefit to farmers in the area owning few buildings, who nevertheless will be forced to pay the higher property taxes.

Regarding the cost of extending services, the City represented they would have a deficit of $20,000 the first year after annexation. Others, however, placed that figure at $30,000, and projected any deficit to grow over time. Still others questioned Shawnee's financial ability to meet the increased burden, pointing out that recently the City had been barely able to meet a minimal 5% pay raise for its employees. A city planner/consultant working with figures from Shawnee's own budget testified that by 1995 that budget would require roughly twice the revenue sources available to the city, a need which could only result in increased taxes or decreased public services.

Overall, Shawnee claimed the landowners would receive a material benefit from the services to be provided immediately after annexation. Opposing landowners, however, asserted that the City's plan provided little in the way of new services; but for marginal expenditures Shawnee was making no substantial commitments to the area in question. Still others contended sufficient manifest injury would flow simply from the loss of valuable farmland. Many claimed Shawnee had failed to prove its need for the area, the feasibility of the annexation, or its financial ability to assume such a burden. One concluded that in light of the present situation in the entire area, and the limited growth projected to occur, Shawnee's attempt was simply premature.

The Board, in its order denying annexation, found manifest injury to the landowners would result from "obvious impairment to the real estate involved in that the landowners sought to be annexed would not share within a reasonable time the municipal

services and benefits now accorded to the landowners in other portions of the municipality upon a footing of substantial equality . . . ."

Upon review of the foregoing, it is clear the evidence before the Board was sharply conflicting. The evidence was such that reasonable minds could certainly have differed on the question of manifest injury to the affected landowners. It is not our duty, however, to reweigh the evidence or to substitute our judgment for that of the administrative tribunal. We find the Board's original denial was supported by substantial evidence and therefore neither arbitrary nor capricious. The Board's denial of Shawnee's petition for annexation is affirmed and the May 2, 1983, judgment of the district court is reversed.

We should mention, in passing, one additional issue raised in this appeal. The trial court, acting upon Shawnee's request, deleted certain land owned by the 1981 intervenors from the city's annexation petition after those intervenors withdrew from the case. Did the court have authority to grant such deletion and, if not, does that action affect our standard of review herein?

We have held that "[a] court does not have the power to place the boundary line in a position other than that described by the city in its [annexation] ordinance, for the fixing of city boundary lines is a legislative act." *Board of Riley County Comm'rs v. City of Junction City*, 233 Kan. 947, Syl. ¶ 1, 667 P.2d 868 (1983). As can be seen from a review of that decision, there is a longstanding policy against judicial participation in the annexation to the degree of altering the boundary lines of the area sought to be annexed. It is just as clear that such an alteration was effected by the district court in the present case through granting Shawnee's motion to delete certain lands from its original petition.

Under K.S.A. 12-521 it is the board of county commissioners which has the authority to grant annexation of that territory described in the city's petition, or a lesser amount thereof, not the city nor a district court. In the instant case the city petitioned the trial court, not the Board, for authority to annex a lesser area than that described in the original petition; and it was the court, not the Board, which granted the deletion. It may well be the Board condoned the action of both the city and the trial court, especially given the history of the proceedings below. However, the record is totally void of any official action taken by the Board in this regard.

We conclude the district court erred in granting the city's motion to delete land from the original annexation appeal. As has been previously stated, the district court's scope of review was legally limited to a consideration of the same evidence as was before the administrative tribunal, without either expansion or deletion.

The error committed by the trial court in deleting land from the original annexation petition does not alter our decision as previously announced. Our review of the Board's denial of Shawnee's annexation petition was limited to the evidence presented to the Board in the original petition, without the attempted deletion.

We are now left with the declaratory judgment action, case number 56,249, filed by Bonner Springs collaterally attacking the district court's judgment, in case number 55,901, granting the City of Shawnee's annexation petition.

We find that the issues raised by Bonner Springs in its declaratory judgment action are now moot inasmuch as we have, in the companion case, affirmed the denial of Shawnee's annexation petition by the Board of County Commissioners and have reversed the district court's judgment granting the petition.

The judgment of the district court granting the City of Shawnee's petition for annexation is reversed in case number 55,901, and the denial of said annexation petition by the Johnson County Board of County Commissioners is affirmed. The declaratory judgment action, in case number 56,249, is found to be moot.

HOLMES, J., not participating.

LOCKETT, J., concurring in part and dissenting in part: I agree with the majority that the Board had no jurisdiction to reconsider or change its order or judgment after a valid appeal had been perfected to the district court.

The majority cites the general law governing an appeal from an order of an administrative tribunal. The district court may not substitute its judgment for that of an administrative tribunal, and is restricted to considering, as a matter of law, whether the tribunal acted fraudulently, arbitrarily or capriciously; whether the administrative order is substantially supported by evidence; and whether the tribunal's action was within the scope of its authority.

We, in reviewing a district court's judgment, determine whether a district court observed the requirements and restrictions placed upon it. We then make the same review of the administrative tribunal's action as does the district court. *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 436 P.2d 828 (1968).

Here, the district court did not review the record to make an independent review of the evidence presented to the agency as required by statute and case law. It simply relied on the improper stipulation of the Board and Shawnee. There was no review by the district court to appeal.

Prior to this we have remanded cases back to the lower court with instructions to apply the correct standard of review. The majority now states that even though the district court has not reviewed the record, we have the record so let us act as the district court and determine the issue; a remand to the district court will only cause unnecessary delay, expense to the litigants and a drain of judicial resources. Such is true in every case we have remanded back to the district court after a trial or hearing on a record.

We are blazing a new trail. Under the majority's new appellate procedure, when we review as a district court, there is no appeal of our review. The review and appeal as provided by statute or case law is eliminated. We have muddied a clear stream.

McFARLAND, J., joins in the foregoing concurring and dissenting opinion.