(900 P.2d 249)

No. 72,721

In the Matter of the Marriage of LINDA MONSLOW, *Appellee*, and H. VINCENT MONSLOW, *Appellant*.

Opinion filed July 28, 1995.

*J. Charles Droege*, of Overland Park, for the appellant.

*David J. Waxse*, of Shook, Hardy & Bacon, P.C., of Overland Park, for the appellee.

Before BRAZIL, C.J., LEWIS, J., and JACK L. BURR, District Judge, assigned.

LEWIS, J.: Vincent and Linda Monslow were married in 1981. One child was born to the marriage. They were divorced in 1992. Vincent appeals from the trial court's order regarding maintenance, property division, child visitation, and a laundry list of 17 other decisions made by the trial court.

We affirm.

The facts will be developed as needed as we deal with the issues raised on appeal.

## MAINTENANCE

Vincent is an attorney and a member of the Blackwood Langworthy law firm. Linda was also employed at the time of the divorce. As we often see in cases of this nature, Linda apparently worked during Vincent's years in law school to support the couple and assist her husband in completing his law degree.

At about the time of the divorce, Vincent had just emerged from the dissolution of his old law firm and started practice with the firm

noted above. Vincent's average income was $4,227 per month over the last 11 months prior to trial. Linda's yearly income was $24,000. Her income the year previous to the divorce was $36,000 with the same employer.

The trial court ordered Vincent to pay $450 per month in basic maintenance based on Vincent's average monthly income and on Linda's needs. This was to be paid for a period of 48 months. In addition to the basic maintenance, the trial court ordered Vincent to pay, on a quarterly basis, 20 percent of any gross income he received above his average monthly income of $4,227. The amount paid under this escalator clause was deemed by the trial court to be "additional maintenance."

Vincent first argues that the trial court abused its discretion in its award of basic maintenance in the amount of $450 per month. We do not agree.

The factors required to be taken into consideration on an award of maintenance are set out in K.S.A. 60-1610(b)(2) and need not be repeated in this opinion. Our Supreme Court has said:

"There is no fixed rule on the subject and the district court in a divorce action is vested with wide discretion in adjusting the financial obligations of the parties. Thus, its exercise of that discretion will not be disturbed on appeal in the absence of a showing of clear abuse." *Williams v. Williams*, 219 Kan. 303, 306, 548 P.2d 794 (1976).

Our standard of review on abuse of discretion is well known and need not be repeated. See *In re Marriage of Cray*, 254 Kan. 376, 387, 867 P.2d 291 (1994).

We have carefully reviewed the record and considered Vincent's complaints that the trial court abused its discretion in awarding basic maintenance. We do not agree. The award is supported by the evidence and the dictates of K.S.A. 60-1610(b)(2). It does not overpass the "bounds of reason and justice" in any sense. We hold that the trial court did not abuse its discretion in the award of basic maintenance in this action.

Vincent contends that the "additional maintenance" awarded in this case is not permitted under Kansas law. He argues that the "internal escalator clause" utilized by the trial court is not valid in Kansas. This appears to be an issue of first impression in this state.

Our research reveals at least three appellate decisions in which an internal escalator clause has been contained in a maintenance award. Unfortunately, none of these decisions involves the issue raised in this appeal, and they are not relevant to our decision. See *Johnson v. Johnson*, 219 Kan. 190, 547 P.2d 360 (1976); *Miller v. Miller*, 209 Kan. 290, 496 P.2d 1343 (1972); *Beard v. Beard*, 5 Kan. App. 2d 458, 618 P.2d 856, *rev. denied* 229 Kan. 669 (1980).

Professor Elrod, in her Kansas Family Law Handbook, has discussed the validity of escalator clauses:

"Whether an alimony escalator clause may be tied to inflation depends on the jurisdiction. The trend, however, is to recognize these clauses. Courts justify cost of living increase clauses on the basis that they minimize the risks of yearly battles and result in reduced legal costs. If the parties can tie their increases to a recognized index, i.e. cost of living or consumer-price, inflation does not erode maintenance awards. In Kansas, the judge cannot decree maintenance to raise beyond the amount stated in the original decree. However, the parties, in a separation agreement, could insert an escalation clause." 1 Elrod, Kansas Family Law Handbook § 10.065, p. 10-40 (rev. ed. 1990).

Professor Elrod appears to conclude that a maintenance escalator clause cannot be utilized by a trial court in this state. We do not agree with that interpretation.

In those states which have considered the issue, there is a split of authority. The different perspectives on the issue can be viewed by reading the annotation in 19 A.L.R.4th 830.

Obviously, Vincent urges us to adopt the approach taken by those states which have disapproved the trial court's use of an escalator clause in awarding maintenance. He argues that such a clause does not take into consideration the basic factors required, including Linda's need and his ability to pay. He further contends that this type of clause permits the automatic modification of a maintenance award without the necessary notice and an opportunity for a hearing.

In the final analysis, we view the validity of the clause in question to be largely parochial. It must be decided not on the basis of a broad philosophical theory but on the strict basis of what the Kansas statutes do and do not permit. As a result, we do not view the decisions of our sister states as carrying great significance.

K.S.A. 60-1610(b)(2) states in pertinent part: "Maintenance may be in a lump sum, in periodic payments, on a percentage of earnings *or on any other basis.*" (Emphasis added.)

The term "any other basis" offers broad support to any reasonable formula employed by a trial court in awarding maintenance. It would appear to permit the use of any formula deemed reasonable under the circumstances. Accordingly, we hold that the Kansas statute does permit the reasonable use of an escalator clause in ordering maintenance. The standard by which we should judge the validity of such a clause is one of abuse of discretion. The use of such a clause is consistent with the overall nature of and philosophy behind an award of maintenance. In this case, the trial court recognized the growth potential of Vincent's income and tied a percentage of his maintenance obligation to that growth potential. This is not an unreasonable approach and takes into consideration such factors as a single large fee being suddenly injected into Vincent's income. The validity of that approach is supported by the fact that Vincent had earned a $60,000 contingency fee just prior to the break-up of his original law firm. In the law business, occasional large fees are not unheard of, and if maintenance is to be based on the income of the payor, the escalator clause is a reasonable way of dealing with temporary and significant increases in income.

We point out that Vincent always has the ability to modify the maintenance award. Should his income drop below its current level or should other circumstances develop which warrant it, Vincent has every right to file a motion for modification of the award. The escalator clause utilized by the trial court does not discourage or hinder his right to file a motion to modify when circumstances indicate such a motion would be meritorious.

In conclusion, the escalator clause utilized by the trial court in the decree under consideration is lawful in Kansas and was not an abuse of the trial court's discretion.

## THE PATENT

Another issue of first impression exists regarding the trial court's division of the patents held by Vincent.

Vincent owns a partnership interest in two patents on a concept which is referred to as "Video on Demand." The trial court awarded the patents to Vincent subject to a lien of 40 percent of the income from the patents, which the trial court vested in Linda. Linda's share of any income from the patents is to be calculated only after deducting necessary expenses.

The division of property in divorce actions is controlled by K.S.A. 60-1610(b)(1). Subsection (B) provides the court with authority to award "the property or part of the property to one of the spouses and [require] the other to pay a just and proper sum."

Vincent first argues that a patent is not subject to division in a marital action. We disagree.

To begin with, Vincent may have invited the trial court's action by his own testimony. While he was being cross-examined by Linda's attorney, the following took place:

"Q. [Waxse] And you agree the patent is incapable of an accurate evaluation at the current time?

"A. [Vincent] That's a loaded question. I mean I think it has tremendous potential and maybe someone could tell you what that potential is. I haven't wasted my money to go out and find that out."

"Q. My question was: In your opinion does [the patent] currently have any value that you can put a number on?

"A. Not that I can put a number on, but it has value I would say.

"Q. *And, therefore, if you can't put a number on it, it has got to be divided in kind; right?*

"A. *What do you mean by 'kind'?*

"Q. *Your wife is going to get a percentage of it and you are going to get a percentage of it?*

"A. *That would be fine with me.*" (Emphasis added.)

Vincent's domestic relations affidavit did not value the patents but characterized them as expectancies. The affidavit urged that the trial court set aside the patents to Vincent or, alternatively, that it award Linda 6 percent of any gross proceeds or 50 percent of the first $3 million. It appears to us that in dividing the income from the patents the trial court acted consistent with Vincent's suggestions. This raises a question of invited error. "On appellate review, a party may not complain of rulings or matters to which it has consented or take advantage of error that it invited or in which

it participated." *Cott v. Peppermint Twist Mgt. Co.*, 253 Kan. 452, Syl. ¶ 3, 856 P.2d 906 (1993). We conclude that we could affirm the trial court's order on the theory of invited error.

However, we choose to examine the merits of this issue because it is one of first impression in this state. The question is whether the law of the State of Kansas treats patents as marital assets subject to division. The patents in this case were acquired during the marriage of Vincent and Linda, which supports their divisibility in a divorce action. In addition, under federal law, patents have the attributes of personal property. 35 U.S.C. § 261 (1988). "While a patent is not a conveyance of property from the government, it is a species of property—incorporeal, personal property which has no local situs in itself, but whose situs follows the person of its owner." 60 Am. Jur. 2d, Patents § 7, pp. 44-45.

Vincent argues that a patent does not possess the qualities commonly attributed to marital property subject to division and cites *Grant v. Grant*, 9 Kan. App. 2d 671, 685 P.2d 327, *rev. denied* 236 Kan. 875 (1984), as authority. This decision was overruled by the legislature in 1987. See K.S.A. 23-201(b); L. 1987, ch. 120, § 1. In *Grant*, we listed "qualities commonly attributable to marital assets such as cash surrender value, loan value, redemption value, lump sum value, or a value realizable after the death of the retiree." 9 Kan. App. 2d at 676. In *Grant*, we concluded that a military pension was not property subject to division. We do not consider *Grant* to be in accord with current thinking on the issue and do not feel bound by it.

The decisions of other states on this issue are split.

A number of states have considered or treated a patent or invention as marital property subject to division. See *Lorraine v. Lorraine*, 8 Cal. App. 2d 687, 48 P.2d 48 (1935); *Howes v. Howes*, 436 So. 2d 689, 691-92 (La. App. 1983) (patent earned during marriage is community property); *Hazard v. Hazard*, 833 S.W.2d 911, 916 (Tenn. App. 1991) (future revenues from tracheostomy kit produced by husband during marriage, even though kit would require minor postmarital modification); *Dunn v. Dunn*, 802 P.2d 1314, 1319 (Utah. App. 1990) (future royalties on instruments for

implanting artificial knees; husband invented instruments during marriage).

Cases reaching a contrary result have found that future income from the patents at issue was too speculative to divide. See *Yannas v. Frondistou-Yannas*, 395 Mass. 704, 714, 481 N.E.2d 1153 (1985) (value of husband's patents on artificial skin designed for the treatment of severe burn victims was too speculative to treat as marital property at divorce); *Woodward v. Woodward*, 294 S.C. 210, 216, 363 S.E.2d 413 (Ct. App. 1987) (awarding husband an interest in wife's speculative profits from unspecified patent would violate public policy favoring finality of judgments).

Vincent's principal argument in this case is that the patents involve mere expectancies and have no readily ascertainable value. Therefore, they are not property that can be divided by a divorce court. This argument is made despite the fact that Vincent offered into evidence his own plan for developing the patents which forecast a net profit of $48.5 million by the fifth year of market. Vincent's own evidence is certainly a strong indication that the patents have a potential significant value.

We have researched the matter and examined cases on both sides of the issue. We conclude that as a matter of law the patents in this case were marital property and subject to division. Under our statute, a trial court is directed to divide the "real and personal property of the parties." K.S.A. 60-1610(b)(1). The patents in this case are clearly included in that definition.

The next question is whether the 60/40 division of the patents' income by the trial court was an abuse of discretion. We conclude that it clearly was not.

We allude to Vincent's own testimony and to his domestic relations affidavit. In effect, the trial court adopted Vincent's suggestions and his alternative solution to the problem, although it awarded Linda a more generous interest in the potential patent income.

In light of his domestic relations affidavit and his testimony that a percentage split would be "fine with me," we do not feel Vincent is in a position to claim that the trial court abused its discretion when it divided the future potential income from the patents on a

60/40 basis. The trial court's action was clearly invited by Vincent's testimony and his domestic relations affidavit.

In addition, there is no showing that the trial court abused its discretion in this regard. The 60/40 split of the potential future patent income is clearly supported by the evidence, and we consider it to be a proper method of dealing with an asset of uncertain future potential. We approve this division by the trial court and hold that the trial court did not abuse its discretion in making such a division.

Vincent also argues that the division of the patents by the trial court violates the "clean break" rationale discussed by the Supreme Court in *In re Marriage of Sadecki*, 250 Kan. 5, 12-14, 825 P.2d 108 (1992). He also argues that the award of the potential patent income was a violation of federal law, which controls the method of assigning interest in a patent. Neither of these arguments have merit, and we reject them.

## VISITATION ORDERS

Vincent also complains about the trial court's order concerning visitation with the parties' minor child. The record indicates that the trial court awarded joint custody of the child to both parties with primary residential custody in Linda. It then ordered visitation in accord with the Johnson County Family Law Bench/Bar Guidelines. Those guidelines suggest a visitation scheme which gives one parent visitation on Christmas Eve, the other parent visitation on Christmas Day, and reverses those visitations the following year.

Linda asked the trial court to reconsider its Christmas visitation order. She pointed out that such a schedule precluded her from making any out-of-town travel plans over the holidays. The trial court withdrew its order concerning Christmas visitation and ordered the parties to either reach an agreement on Christmas visitation or seek mediation. If none of that worked, the trial court directed the parties to file an appropriate motion with the trial court.

Vincent argues that the trial court's treatment of Christmas visitation was an abuse of discretion. We do not agree.

The trial court merely ordered the parties to agree on Christmas visitation. This does not seem to us to be an extreme request. It is certainly not an abuse of discretion. If Vincent and Linda cannot agree on Christmas visitation, they are to take the matter to mediation. If mediation fails, the trial court will consider the matter and make such orders as are necessary.

We conclude that the trial court's orders in regard to Christmas visitation were reasonable and not an abuse of discretion.

## THE LAUNDRY LIST

Vincent concludes by listing 17 additional issues wherein he believes the trial court erred or abused its discretion. These issues range from the trial court's treatment of the parties' dispute over various minor items of personal property to the trial court's decision on summer visitation and the application of the Johnson County Family Law Bench/Bar Guidelines.

We do not intend to expand this opinion by examining each and every issue raised by Vincent. Suffice it to say, we have examined his arguments, we have read the record, and we have, in each instance, found Vincent's issues to be without merit. In each instance raised by Vincent in this laundry list of errors, we hold that the trial court did not abuse its discretion and did not err in its various rulings.

Affirmed.