**Michael CANANIA, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

No. 20355.

Missouri Court of Appeals,
Southern District,
Division Two.

March 13, 1996.

Jeremiah W. (Jay) Nixon, Attorney General, James A. Chenault, III, Special Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for appellant.

John Howard Bloodworth, Poplar Bluff, for respondent.

CROW, Judge.

The Director of Revenue ("Director") appeals from an order reinstating the driver's license of Michael Canania ("Canania"). Director had suspended Canania's license per § 302.505.1 [1] after determining Canania was arrested upon probable cause to believe he was driving a motor vehicle while the alcohol concentration in his blood was ten-hundredths of one percent or more by weight.

The case reached the trial court following administrative review under § 302.530 in which the suspension was sustained. Although the trial court heard the matter de novo, § 302.535, almost all facts were established by a rambling verbal stipulation by counsel for the parties.

We glean from the record that Canania was arrested February 18, 1994, in Carter County by Deputy Sheriff James Adams. Adams administered a Breathalyzer test revealing Canania had a "blood alcohol content" of .191 percent by weight.

Although Trooper Clint E. Dill of the Missouri State Highway Patrol, holder of a Type

---

1. References to statutes are to RSMo 1994.

II permit issued by the Department of Health, had performed a "maintenance check" on the Breathalyzer February 14, 1994 (four days before Canania's arrest), Canania maintained in the trial court that "the breath test was improper" because the "original packet of documents" sent to Director regarding Canania's arrest did not contain a copy of Dill's "BAC Verifier Maintenance Report" of February 14, 1994, certifying that the Breathalyzer was operating properly. Instead, said Canania, the packet contained "an expired report."

Canania cited the trial court to 19 CSR 20–30.031(3), which provides, in pertinent part:

"A Type II permittee shall perform maintenance checks on breath analyzers under his/her supervision at intervals not to exceed thirty-five (35) days. The permittee shall retain the original report of the maintenance check and submit a copy of the report so that it shall be received by the department within fifteen (15) days from the date the maintenance check was performed...."

Canania stipulated that Dill's maintenance report of February 14, 1994 (a copy of which was identified in the trial court as Exhibit 1), was sent to Director some time after Canania took the Breathalyzer test.

Dill, called as a witness by Director, was questioned about Exhibit 1:

"Q. And did you write down the serial number of the [Breathalyzer] machine [on Exhibit 1]?

A. Yes I did.

. . . .

Q. Did you complete all of the items on that checklist?

A. Yes, I did.

Q. Did you complete them in the order that they appear?

A. Yes.

Q. Did you ah, skip any items?

A. No.

Q. Did you enter the information at the time of the check?

A. Yes, I did.

Q. And did you sign it at the bottom?

A. Yes, I did.

Q. Ah, what did your maintenance check of that machine reveal?

A. It showed that it was operating properly at that time."

At that point in Dill's testimony, the trial court expressed the belief that Exhibit 1 should be offered in evidence. Canania thereupon objected to Exhibit 1 because it was "brought into court this morning ... faxed from somewhere."

The trial court ruled Dill could "use [Exhibit 1] in his testimony," and took "under advisement" the question of whether Exhibit 1 should be received in evidence.

In response to that ruling, Canania objected to Dill "testifying from [Exhibit 1] unless ... it is clear that he has no clear recollection of checking his machine."

The trial court overruled that objection, whereupon Dill's testimony continued:

"Q. ... what was the time of the inspection?

A. It was 8:49 ... A.M.

Q. Ah, what did your diagnostic check of the machine reveal?

A. The diagnostic check attached to this, it showed that the instrument was operating properly, everything was within set perimeters, and, ah, everything appears to be operating properly."

Director asked Dill no further questions.

In ordering Director to reinstate Canania's license, the trial court held:

"(a) The Director of Revenue has the burden of proving that the breathalyzer machine used in the subject test had been properly maintained within thirty-five (35) days prior to giving the test;

(b) That the Director of Revenue failed in its proof to establish that the breathalyzer had been properly maintained within said thirty-five (35) day period; said maintenance report must either be established under the business records exception to the hearsay rule or must be provided by competent testimony of the officer;

(c) The Court finds that subject to [Canania's] hearsay and best evidence rule

objection, the officer read into evidence his maintenance report from a facsimiled copy;

(d) That said reading from a facsimiled copy was hearsay unless a proper foundation had been laid by counsel for the Director of Revenue to refresh the officer's recollection;

(e) That a proper foundation was not laid by the counsel for the Director of Revenue and, therefore, said reading from the facsimiled copy of the officer's maintenance report is hearsay and not competent evidence."

Director's brief presents three points relied on, the second of which is:

**"The court below erred in setting aside the suspension on the grounds that [Director] failed to prove that the breath analyzer had been properly maintained because [Director] proved said issue, in that the Type II permit holder testified without objection that he had performed a maintenance check within 35 days of [Canania's] test and that the machine was operating properly."**

In support of the point, Director calls our attention to the testimony of Dill, quoted earlier, which came in without objection prior to the trial court's proclamation that Exhibit 1 should be offered in evidence. For convenience, we henceforth refer to that segment of Dill's testimony as "Dill's unobjected testimony."

■ Director maintains that Dill's unobjected testimony was sufficient to support a finding that the Breathalyzer was inspected four days before Canania's test and was found to be operating properly.

In response, Canania insists he made "a specific and laborious objection" to Dill's testimony. However, as we have seen (and as Director emphasizes), Canania's objection came only after Dill's unobjected testimony. When Canania registered the objection, Dill had already testified that his maintenance

check on February 14, 1994, confirmed the Breathalyzer was operating properly.

■ When evidence pertinent to one of the issues in a case is received without objection, the party against whom it is offered waives any objection to such evidence, and it may be properly considered even if it would have been excluded upon a proper objection. *Reinert v. Director of Revenue*, 894 S.W.2d 162, 164[2] (Mo. banc 1995).

■ Applying *Reinert*, we hold the trial court erred in the instant case by ruling in paragraph "(c)" of its order, quoted *supra*, that Dill read Exhibit 1 into evidence over Canania's objection, and by ruling in paragraph "(e)" of its order that Dill's testimony was consequently "not competent evidence." The transcript indisputably demonstrates that Canania voiced no objection to Dill's testimony about his February 14, 1994, inspection of the Breathalyzer until the trial court aired the notion that Exhibit 1 should be offered in evidence. By then, Dill's unobjected testimony had been received and was entitled to whatever weight the trial court chose to give it.[2] If believed by the trial court, such testimony was sufficient to support a finding that the Breathalyzer was operating properly four days before it was used to test Canania's breath.

Our holding is consistent with *Bautista v. Director of Revenue*, 843 S.W.2d 1 (Mo.App. W.D.1992). There, the officer who administered a Breathalyzer test to a driver used a printed form that differed from the one approved by the Department of Health. *Id.* at 2. Upon trial de novo, the driver argued that the result of the test was therefore inadmissible. *Id.* The trial court disagreed, received the result in evidence, and affirmed the suspension of the driver's license. *Id.*

On appeal by the driver, the Western District of this Court held that Director, in fulfilling the burden of proof imposed by § 302.535.1, "is not confined to the reports and records available," but may satisfy the

---

**2.** It is unnecessary to decide whether the trial court was correct in ruling in paragraph "(d)" of its order that Dill's unobjected testimony was hearsay. That is because hearsay, if not objected to, may be considered along with other evidence. *Rooney v. Lloyd Metal Products Co.*, 458 S.W.2d

561, 566 (Mo.1970); *Thorpe v. Meier*, 755 S.W.2d 683, 691[4] (Mo.App.S.D.1988). The probative worth and value of such evidence is for the trier of the facts. *Thorpe*, 755 S.W.2d at 691; *G___ M___ H___ v. J___ L___ H___*, 700 S.W.2d 506, 512[1] (Mo.App.S.D.1985).

burden "by all available evidence." *Id.* Accordingly, the testimony of the officer who administered the Breathalyzer test, which demonstrated that the officer adhered to all requirements of the Department of Health, was sufficient to satisfy Director's burden of proof. *Id.* at 3. Citing *Young v. Director of Revenue*, 835 S.W.2d 332 (Mo.App.W.D. 1992), *Bautista* held: "[T]estimony from the officer administering the breath analysis test is admissible to show compliance with the Department of Health Regulations.... Proof of compliance is not limited to the records themselves." 843 S.W.2d at 3.

The instant case is identical to *Bautista* except that here Dill's unobjected testimony pertained to his maintenance check of the Breathalyzer on February 14, 1994, instead of the test given Canania four days later.

We have not overlooked Canania's assertion at the outset of the de novo hearing that "the breath test was improper" because a copy of Exhibit 1 was not in the "original packet of documents" sent to Director regarding Canania's arrest. Assuming, arguendo, that this assertion qualifies as a motion in limine challenging the admissibility of Dill's testimony, it does not affect our holding on Director's second point.

■ A motion in limine is interlocutory in nature, and it is necessary to lodge a specific objection during trial to the introduction of evidence toward which the motion is directed. *Sooter v. Magic Lantern, Inc.*, 771 S.W.2d 359, 362[4] (Mo.App.S.D.1989). As reported earlier, Canania made no objection to Dill's testimony until after Dill had testified the Breathalyzer was operating properly when he inspected it February 14, 1994.

Dill's alleged failure to file a copy of Exhibit 1 with the Department of Health within the time required by 19 CSR 20–30.031(3), quoted *supra*, is no reason to overturn the suspension of Canania's driver's license. In *Turcotte v. Director of Revenue*, 829 S.W.2d 494 (Mo.App.E.D.1992), the suspension of a driver's license was set aside by a trial court because the officer who inspected the Breathalyzer failed to file a copy of his inspection report with the Department of Health within the specified time. Reversing

the trial court, the Eastern District of this Court held:

"[A driver] has no interest in the maintenance reports being properly filed.... [F]ailure to file timely maintenance reports does not impeach the machine's accuracy, which is the main concern here.... The legislative intent behind this regulation is to allow the Department of Health to verify compliance with its regulation, not to accord procedural protection to drunk drivers."

*Id.* at 496. *Accord: Johnson v. Director of Revenue*, 833 S.W.2d 482, 483 (Mo.App.E.D. 1992).

We therefore find Director's second point meritorious. Accordingly, the judgment must be reversed and the case must be remanded to the trial court so it can decide whether Dill's unobjected testimony convinces it that the Breathalyzer was operating properly when Canania was tested February 18, 1994.

■ Remand would have been unnecessary had we found merit in Director's first point—a point not yet discussed. In that point, Director maintains Canania "stipulated to the [Breathalyzer] test results, and to the fact that the [Breathalyzer] had been timely inspected and was working properly." Citing *Sellenriek v. Director of Revenue*, 826 S.W.2d 338 (Mo. banc 1992), Director insists the stipulation made it unnecessary for Director to prove compliance with the Breathalyzer maintenance requirements of 19 CSR 20–30.031(3), hence the trial court erred in holding that Director failed to prove that element.

Obviously, a ruling by us in favor of Director on this point would result in an outright reversal of the trial court's order with no need for remand.

In response to Director's first point, Canania argues he stipulated to the result of the Breathalyzer test only if Director "was successful in proving that the [Breathalyzer] was indeed properly maintenanced [sic]."

The segment of the trial court's order quoted *supra* implies the court believed the stipulation did not relieve Director from proving the Breathalyzer was inspected and

found to be operating properly within 35 days before it was used to test Canania's breath.

The trial court may have been led to that deduction by a "Post–Trial Memorandum" filed by Director ten days after the de novo hearing. In that document Director argued Exhibit 1 was admissible, but even if not, Dill's testimony was sufficient to satisfy Director's burden of proving that the maintenance requirements of 19 CSR 20–30.031(3) were satisfied. Nowhere in the "Post–Trial Memorandum" did Director claim the stipulation relieved her of that burden.[3]

 A party is bound on appeal by the position he took in the trial court. *Mason v. Mason,* 873 S.W.2d 631, 636[15] (Mo.App. E.D.1994); *Spicer v. Farrell,* 650 S.W.2d 695, 696–97[2] (Mo.App.S.D.1983). A party cannot lead a trial court into error and then employ the error as a source of complaint on appeal. *In re Marriage of Collins,* 875 S.W.2d 643, 648[8] (Mo.App.S.D.1994); *Reed v. Rope,* 817 S.W.2d 503, 509[11] (Mo.App. W.D.1991).

Applying those doctrines, we hold Director's "Post–Trial Memorandum" precludes appellate review of Director's first point.

Director's third (and final) point is premised on the supposition that the trial court had the erroneous notion that the original of Exhibit 1 had to be kept with the Breathalyzer. Canania initially made that contention in the trial court. However, Canania's brief says: "[T]his issue was satisfied and abandoned by [Canania]." Furthermore, as Canania points out, the trial court's order demonstrates the court did not base its ruling on the belief that the original of Exhibit 1 had to be kept with the Breathalyzer.

Canania's abandonment of the issue ensures it will not arise on remand, so we need say nothing more.

The trial court's order is reversed, and the case is remanded to the trial court for resolution of the fact issue specified *supra* in the

**3.** The lawyer who filed the "Post–Trial Memorandum" for Director is not the lawyer representing

segment of this opinion addressing Director's second point.

PREWITT, P.J., and PARRISH, J., concur.

Director in this appeal.