In re the **MARRIAGE OF Vicki Lorraine PERKEL and Marc Perkel.**

**Vicki Lorraine PERKEL, Respondent,**

v.

**Marc PERKEL, Appellant.**

No. 21362.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 10, 1998.

Motion for Rehearing and Transfer to Supreme Court Denied March 3, 1998.

Application for Transfer Denied
April 21, 1998.

Appellant pro se.

James R. Sharp, Wear & Sharp, Springfield, for respondent.

Before GARRISON, P.J., and PREWITT and CROW, JJ.

PER CURIAM.

Marc Perkel appeals from a judgment dissolving his marriage[1] to Vicki Lorraine Perkel.

Marc,[2] appearing pro se, presents a brief which lists nine "Points on Appeal." They bear the following headings: "Division of Property," "Incomplete Order," "Maintenance," "Corporation," "Due Process," "Fraud upon the Court," "Division of Property" (again), "The Trial Was Irregular" and "Attorney's Fees."

Before addressing that segment of Marc's brief, we set forth the principles governing appellate review of decrees[3] of dissolution of marriage.

An appellate court must affirm the decree unless there is no substantial evidence to support it, unless it is against the weight of

---

1. Section 452.305.1, RSMo 1994, provides: "The circuit court shall enter a *decree of dissolution of marriage* ..." (emphasis supplied). The trial court denominated its adjudication a judgment in an apparent effort to ensure appealability under Rule 74.01, Missouri Rules of Civil Procedure (1996). The designation "judgment" appears unnecessary, as paragraph "(a)" of the rule provides that the term "judgment" as used therein "includes a decree and any order from which an appeal lies."

2. For brevity and clarity, we refer to the litigants by their respective forenames. We mean no disrespect.

3. Footnote 1, *supra*.

the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Mehra v. Mehra*, 819 S.W.2d 351, 353[1] (Mo. banc 1991). The appellate court defers to the trial court's determinations of credibility, viewing the evidence and permissible inferences therefrom in the light most favorable to the decree and disregarding all contrary evidence and inferences. *Id.* at 353[2]. That is because credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of the testimony of any witness. *Herbert v. Harl*, 757 S.W.2d 585, 587[1] (Mo. banc 1988). The appellate court considers only the record made before the trial court. *Hubbs v. Hubbs*, 870 S.W.2d 901, 906[4] (Mo.App. S.D. 1994). The appellate court does not consider allegations of fact extraneous to the record. *First National Bank of Carrollton v. McClure*, 666 S.W.2d 434, 436[1] (Mo.App. W.D.1983).

The facts recited in this opinion are gleaned from the record, viewed as set forth above.

The parties married September 1, 1989; they separated on or about August 11, 1994. The union produced no offspring.

Trial occurred June 24–25, 1996; the trial court filed its judgment August 5, 1996.

Before the parties married, Marc owned a home at 1452 North Clay in Springfield ("the Clay house"). He bought it for $26,000. It was encumbered by a mortgage lien when the parties married. The parties resided there during the marriage, until the separation.

Marc, a computer programmer, was the incorporator of Computer Tyme, Inc. ("CT"), a Missouri corporation formed in 1984. A certified public accountant characterized CT as a "Subchapter S corporation," explaining that for tax purposes "income flows through to the individual shareholders."

Marc testified he is employed as "president and owner" of CT; there are no other shareholders and never were.[4] Marc worked at CT from its inception. Vicki worked there during the marriage, until March 1994.

When the parties married, CT's business was selling and servicing computer hardware. However, according to Marc, CT's hardware sales were declining so he began changing CT's primary business from hardware to software.

Marc avowed he wrote software marketed by CT, and that from 1990 through 1993 his software was "the best menu on the market" for operating large computer networking systems. However, said Marc, sales began declining after 1993 because his software "cannot launch Windows programs." He explained: "[E]ven though it runs under Windows, it can only launch DOS programs under Windows. And since Windows has its own menuing system built into it, you don't need to buy a menuing system."

In January 1994, the parties bought about eighty acres of land near Fair Grove ("the rural land") for $97,000. To finance the purchase, the parties paid off the lien on the Clay house—about $17,000—with a check from CT. The parties made a $7,000 down payment on the rural land, again with a CT check. The parties financed the $90,000 balance on the rural land with a bank loan, using both the Clay house and the rural land as collateral. At trial, there was evidence that the principal balance on the loan was $80,701.41.

The certified public accountant mentioned earlier agreed with another certified public accountant that the "value" of CT was forty to sixty thousand dollars. Asked whether he agreed, Marc responded, "I would accept that figure."

Appraisals received in evidence showed the Clay house was worth $36,000 and the rural land was worth $117,000.

The trial court calculated Marc's non-marital interest in the Clay house at $12,461.54;

---

4. There was evidence that as of December 14, 1994, no stock certificate had been issued by CT to Marc or anyone else. At time of trial, CT's records contained a subscription agreement dated January 26, 1984 (three days after the certificate of incorporation) obligating Marc to purchase 500 shares of CT at one dollar per share.

the court calculated the parties' marital interest in the Clay house at $23,538.46.[5]

The trial court awarded Vicki the rural land and ordered her to pay the bank loan secured by it (and by the Clay house). The difference between the appraised value of the land ($117,000) and the balance on the loan ($80,701.41) is $36,298.59.

The trial court awarded Vicki the "tractors ... and other equipment" on the rural land, together with an "outdoor portable building" situated there. The trial court did not value those items, but there was evidence they were worth, in the aggregate, $10,300.

The trial court awarded Vicki a 1989 Honda automobile. Both parties testified it was "titled" in CT. Marc "assumed" Vicki "would end up with it," and he acknowledged this was "agreeable" with him. The trial court did not value the Honda, but there was evidence it was worth $9,000.

The trial court awarded Vicki a "Color laptop computer NEC." The trial court did not value it, but there was evidence it was worth $4,500. Although there is no precise evidence as to whether it was marital or nonmarital property, we infer from the record that it was acquired during the marriage, hence we presume it was marital property. § 452.330.3, RSMo 1994.

The trial court awarded Vicki other personal property, but we decline to lengthen this opinion by listing that property item-by-item. As best this court can determine from the record, the aggregate value of the property referred to in the preceding sentence is relatively insignificant compared to the aggregate value of the property identified in the four preceding paragraphs.[6] The aggregate net value of the property in those four paragraphs is $60,698.59. The trial court classified all such property as marital property.

Besides the debt on the rural land, the trial court assigned Vicki seven other debts but did not specify their respective amounts. There was evidence showing those debts totalled $16,721.75. Deducting that sum from the aggregate net value of marital property awarded Vicki (the $60,698.59 in the preceding paragraph) leaves $43,976.84. We henceforth refer to that figure as "Vicki's net marital share."

The trial court awarded Marc the Clay house. As reported earlier, the court calculated the value of the parties' marital interest in it at $23,538.46. However, as we have seen, the house is encumbered by the lien securing the debt on the rural land ($80,701.41).

The trial court awarded Marc a pickup but did not value it. There was evidence by Vicki that the pickup was worth $10,000; there was evidence by Marc that it was worth $9,000. There was also evidence of a "debt" on the pickup. According to Vicki, the debt was $5,390.60; according to Marc, the debt was $10,000. The trial court assigned the debt to Marc but made no finding as to the amount. Thus, the net value of the pickup—inferably marital property—was anywhere from $4,609.40 to zero.

The trial court awarded Marc a Nissan automobile but did not value it. That may be because this court can find no evidence of value in the record. Marc's brief mentions a "1985 Nissan," but identifies no place where the record yields information about it.

The trial court awarded Marc a grandfather clock but did not value it. There was evidence it was worth $900, and was marital property.

---

**5.** The trial court used this formula to calculate Marc's non-marital interest: 9,000/26,000 × 36,000 = 12,461.54. Evidently, the 9,000 represents the "equity" Marc had in the house before CT paid off the 17,000 balance on the mortgage lien. The 26,000 represents the purchase price. The 36,000 represents the appraised value at time of trial. The trial court used this formula to calculate the parties' marital interest: 17,000/26,000 × 36,000 = 23,538.46. Evidently,

the 17,000 represents the payoff of the mortgage by CT.

**6.** Nowhere in the 39 unnumbered pages of Marc's brief does this court find any itemization of the values of the assets awarded each party or the amounts of the debts assigned each party. This court has undertaken, on its own, to mine that data from the 519–page transcript and the multitudinous exhibits.

The trial court awarded Marc a "West Plains note receivable" but did not value it. A list of property presented by Vicki at trial valued the note at $25,000. A personal financial statement signed by the parties February 17, 1993, and received in evidence as Petitioner's Exhibit 12 valued an item described as "Notes Receivable West Plains" at $37,606.98. It is inferable that this item is the "West Plains note receivable" awarded Marc and that its unpaid principal balance was reduced from $37,606.98 to $25,000 during the forty months between February 17, 1993, and trial.

The trial court awarded Marc an item described as "Novell network and computer at his residence" but did not value it. There was evidence that this item was worth $7,500, and was marital property.

The trial court awarded Marc all "copyrights and copyrighted material" but did not value it.

The trial court awarded Marc all other "computer hardware, software, components, equipment and supplies," and all shares of stock in CT. The trial court did not value the property identified in this paragraph. For convenience, we henceforth refer to such property as "the CT shares and chattels."[7]

The trial court awarded Marc other personal property, but we decline to lengthen this opinion by listing that property item-by-item. As best this court can determine from the record, the aggregate value of the property referred to in the preceding sentence is relatively insignificant compared to the aggregate value of the property identified in the eight preceding paragraphs. The trial court classified all property awarded Marc as marital property except Marc's $12,461.54 non-marital interest in the Clay house.

Besides the debt on the pickup, the trial court ordered Marc to pay all debts of CT and four credit card debts. The court did not specify the amount of any such debt, but there was evidence that the four credit card debts totalled between $10,308.30 and $11,527.71.

The trial court determined that "to effectuate a just division of the property and allocation of the debts," Vicki should have judgment against Marc for $60,000 "in lieu of a further share of marital property in kind."

■ Having extracted the foregoing facts from the record, this court turns to Marc's brief, mindful that a party representing himself is bound by the same rules as a party represented by a lawyer. *Olson v. Christian County,* 952 S.W.2d 736, 742[8] (Mo.App. S.D.1997); *Williams v. Shelter Insurance Co.,* 819 S.W.2d 781, 782[2] (Mo.App. S.D. 1991).

Rule 84.04(a) requires that an appellant's brief contain, among other components, the "points relied upon." The function and importance of that component of an appellant's brief was succinctly explained by this court last year:

"The questions for decision on appeal are those stated in the points relied on and a question not there presented is abandoned. *In re Marriage of Flud,* 926 S.W.2d 201, 206 (Mo.App.1996). Issues to which appellant alludes only in argument are not presented for appellate review. *Id.* An appellate court is obligated to determine only those questions stated in the points relied on and issues stated only in the argument portion of the brief are not preserved. *McMillan v. Wells,* 924 S.W.2d 33, 37 (Mo. App.1996)."

*In re Marriage of Miller,* 939 S.W.2d 572, 573[3, 4] (Mo.App. S.D.1997).

As noted in the second paragraph of this opinion, one segment of Marc's brief is designated "Points on Appeal." The averments there refer to, and complain about, sundry rulings by the trial court. We infer those rulings are the ones Marc wants this court to review. Accordingly, this court shall treat that segment of Marc's brief as the "points relied upon." Other complaints and grievances appear elsewhere in Marc's brief, but this court has no duty to consider them and shall not do so.

---

**7.** It is inferable from the record that CT owns no real estate and conducts its business in rented quarters.

The second paragraph of this opinion points out there are two headings under Marc's "Points on Appeal" designated "Division of Property." Read together, the averments under those headings reveal that one of Marc's claims of error is that the trial court was wrong in ordering him to pay Vicki the $60,000 referred to earlier in this opinion.

Vicki's brief responds to that claim of error, endeavoring to demonstrate that the evidence, viewed favorably to the judgment, was sufficient to support the award.

Inasmuch as the parties have briefed the issue, this court shall address it, even though Marc's averments may fail to satisfy the "wherein and why" requirement of Rule 84.04(d). *See: Thummel v. King*, 570 S.W.2d 679, 684–88 (Mo. banc 1978).

Marc maintains that ordering him to pay Vicki $60,000 results in a judgment which leaves him with property of no net value. In Marc's words: "The net judgment was in excess of 100% of [my] assets."

■ In determining whether the trial court erred in awarding Vicki the $60,000, it would have been helpful had the trial court valued the assets and debts in the judgment. However, neither party requested findings per Rule 73.01(a)(3), hence the trial court had no duty to make such findings. *Dardick v. Dardick*, 670 S.W.2d 865, 867–68[2] (Mo. banc 1984).

As recounted earlier, the trial court found the parties had a marital interest of $23,538.46 in the Clay house and awarded the house to Marc.

Marc avers the trial court "misapplied the law in ruling that a portion of the [Clay house] was marital because it was paid for with a dividend check from [my] corporation which should have been ruled non-marital." We infer Marc is referring to the $17,000 CT check which paid off the mortgage lien on the Clay house so it could be used as collateral when the parties bought the rural land.

■ Dividends from non-marital property received during coverture are marital property. *Bizzell v. Bizzell*, 697 S.W.2d 559, 562–63[4] (Mo.App. E.D.1985). Consequently, even if CT remained Marc's non-marital property during the marriage—a subject addressed later—dividends received by Marc from CT during the marriage were marital property. The trial court did not err in ruling the parties had a $23,538.46 marital interest in the Clay house.

As explained earlier, the Clay house, along with the rural land, secures the $80,701.41 debt assigned Vicki.[8] There is, of course, no assurance Vicki will pay the debt. However, the rural land was appraised at $117,000, so it is likely there would be no deficiency if the lender is required to foreclose on the rural land. It is thus probable that the Clay house will ultimately be freed from the lien without Marc having to pay any of the debt. Accordingly, this court holds the award of the Clay house to Marc constituted an award of $23,538.46 in marital property.

Viewing the evidence favorably to the judgment, the net value of the pickup awarded Marc was $4,609.40; the value of the grandfather clock awarded Marc was $900; the value of the "Novell network and computer at his residence" awarded Marc was $7,500. The total of these three amounts ($13,009.40), combined with the $23,538.46 in the preceding paragraph, is $36,547.86.

Another item awarded Marc as marital property was the "West Plains note receivable." As observed earlier, there was evidence valuing it at $25,000. Adding $25,000 to the $36,547.86 at the end of the preceding paragraph produces a total of $61,547.86.

We do not ignore an averment in Marc's brief that CT "is owed money by Computer Services of West Plains." That averment may be a reference to the "West Plains note receivable" awarded Marc and may be a contention that the note belongs to CT and is not marital property. However, Marc does not cite anyplace where the record shows the

8. Under the heading "Incomplete Order" in Marc's "Points on Appeal," Marc avers the trial court failed to completely divide the marital property in that "[my] name is still on the loan" secured by the rural land and the Clay house.

Marc cites no authority demonstrating the trial court was authorized to release Marc from his obligation to the bank on that loan, and this court is aware of no such authority. The complaint is patently meritless.

note is CT's property. Indeed, as previously explained, Petitioner's Exhibit 12 (the parties' personal financial statement of February 17, 1993) listed an item described as "Notes Receivable West Plains." Petitioner's Exhibit 12 also listed an item described as "Net Worth Computer Tyme, Inc" and valued it at $37,675.48. It thus appears the parties treated the "Notes Receivable West Plains" as a personal asset on February 17, 1993, not an asset of CT.

Earlier in this opinion, this court held it is inferable that the "Notes Receivable West Plains" in Petitioner's Exhibit 12 and the "West Plains note receivable" awarded Marc in the judgment are the same item. Accordingly, this court holds the trial court did not err in classifying the "West Plains note receivable" as marital property.

In the five preceding paragraphs this court identified marital property awarded Marc having a net value of $61,547.86. As we have seen, the four credit card debts assigned Marc to totalled between $10,308.30 and $11,527.71. The amount most favor able to the judgment is $10,308.30. Deducting that amount from $61,547.86 leaves $51,239.56. We henceforth refer to that figure as "Marc's partial net marital share." We use the adjective "partial" because that figure does not include the value of the "copyrights and copyrighted material" or the CT shares and chattels awarded Marc.

Petitioner's Exhibit 12 (the parties' personal financial statement of February 17, 1993) listed an asset described as "Value of Copyrights on Software" and valued it at $750,000. Vicki testified the copyrights were "held in Marc's name personally" and he calculated the $750,000 value.

Marc explained: "I figured that ... the life cycle of the software was such that I could probably make $750,000 on it before it became obsolete. So, I put a figure there."

Although the evidence is imprecise, the trial court could have reasonably found that much of the software was written during the marriage.

At trial (June 24–25, 1996), Marc was projecting total sales of $225,000 for 1996. For 1997, he anticipated sales would "drop in the $150,000 range."

We hold the trial court could have reasonably found from Marc's testimony that although the value of the "copyrights and copyrighted material" on the software written by Marc during the marriage had diminished, the value was still substantial.

All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership. § 452.330.3, RSMo 1994. Although such presumption is overcome by a showing that the property was acquired by a method listed in subsection 2 of § 452.330, it is obvious that the software written by Marc was not acquired by any of those methods.

 On appeal, the trial court's determination is presumed correct; the burden is on the appellant to demonstrate error. *Linzenni v. Hoffman*, 937 S.W.2d 723, 725[3] (Mo. banc 1997). Marc cites no case demonstrating the trial court erred in treating the value of the software written by Marc during the marriage as marital property, and this court's independent research has uncovered no Missouri case indicating error.[9] This court therefore declines to convict the trial court of error in classifying the software written by Marc during the marriage as marital property.

Earlier in this opinion this court determined that the evidence, viewed favorably to the judgment, supported a finding that Vicki's net marital share was $43,976.84 and that Marc's partial net marital share was $51,239.56, an amount which did not include the value of software written by Marc during the marriage.

 Where a division of marital property in kind is impractical or does not bring about a fair result, a trial court may award

---

9. A Kansas case, *Matter of Marriage of Monslow*, 21 Kan.App.2d 386, 900 P.2d 249 (1995), sup-

ports the trial court's ruling.

marital property to one spouse and order that spouse to pay the other spouse a sum of money even if the marital property does not contain cash in the amount awarded. *In re Marriage of Shasserre*, 650 S.W.2d 686, 687[5] (Mo.App. S.D.1983). The division of marital property is a matter within the sound discretion of the trial court, and its decision should not be overturned unless abused. *Id.* at [4].

■ Inasmuch as Marc's partial net marital share exceeded Vicki's net marital share by $7,262.72 and Marc's partial net marital share did not include any value for the software, this court holds the trial court did not abuse its discretion in awarding Vicki $60,000 to compensate her for the difference in value between her net marital share and the marital property (including software) awarded Marc. Marc's complaint about the $60,000 award is denied.

Another of Marc's complaints about the division of property is that the trial court did not consider a "payment schedule" for the $60,000.

Marc's United States Individual Income Tax Return for 1994 (the year of the separation) showed adjusted gross income of $62,077; his amended tax return for 1995 showed adjusted gross income of $57,153. Although not yet mentioned in this opinion, the judgment ordered Marc to pay Vicki maintenance of $1,000 per month for twelve months commencing September 1, 1996, and ordered Marc to pay Vicki's lawyers $12,500. Those awards are addressed *infra.* They are mentioned here because they affect Marc's ability to pay the $60,000 instanter.

■ In dividing marital assets, installment payments may be proper if justified by the parties' economic circumstances. *In re Marriage of White*, 601 S.W.2d 644, 644[4] (Mo.App. S.D.1980). This court is empowered by Rule 84.14 to "give such judgment as the court ought to give." This court holds installment payments of the $60,000 are warranted by the circumstances in this case. Accordingly, the judgment is modified by adding thereto the provision for installment payments at the end of this opinion.

**10.** This complaint appears under the heading

Another of Marc's complaints about the division of marital property is that the trial court erred in ruling CT was marital property.[10] In Marc's words: "The court misapplied the law in apparently piercing the corporate veil[.]"

It is unnecessary to decide whether the trial court erred in classifying the CT shares and chattels as marital property. This court has already held the division of marital property (including the $60,000 award to Vicki) was justified in that Marc received his partial net marital share of $51,239.56 plus the "copyrights and copyrighted material" on the software written during the marriage. The CT shares and chattels were not included in Marc's partial net marital share or the software.

■ An error in classifying property is not prejudicial unless it materially affects the merits of the action. *In re Marriage of Jennings*, 910 S.W.2d 760, 765[7] (Mo.App. S.D.1995). This court holds that if the trial court erred in classifying the CT shares and chattels as marital property, the error did not materially affect the merits of the action. That is because the trial court awarded those assets to Marc and this court did not include the CT shares and chattels in calculating the value of the marital property awarded Marc. This court holds the evidence, viewed favorably to the judgment, justifies the $60,000 award to Vicki irrespective of how the CT shares and chattels are classified.

One final comment is necessary regarding the division of marital property. It concerns the Honda automobile awarded Vicki. As reported earlier, the vehicle was "titled" in CT. However, as also reported earlier, Marc testified it was "agreeable" with him for Vicki to receive the Honda.

■ A party cannot lead a trial court into error and then employ the error as a source of complaint on appeal. *Canania v. Director of Revenue*, 918 S.W.2d 310, 315[8] (Mo.App. S.D.1996). Consequently, Marc is barred from complaining about the award of the Honda to Vicki.

"Corporation" in Marc's "Points on Appeal."

The maintenance award, mentioned earlier, is also a subject of complaint by Marc.

The judgment provided:

"The Court finds that it should grant a limited nonmodifiable maintenance order to [Vicki], and if this time limitation as requested by [Vicki] is invalid, then no maintenance at all should [be] ordered.

. . . .

It is further ordered, adjudged and decreed that [Marc] pay maintenance to [Vicki] in the amount of $1,000.00 per month for only twelve months, commencing September 1, 1996; and this order with respect to maintenance is not modifiable."

Marc complains that Vicki did not meet the eligibility requirements for maintenance in § 452.335.1, RSMo 1994.

■ Having considered the arguments of Marc and Vicki, this court holds the trial court could have reasonably found from the evidence that at time of trial, Vicki satisfied the requirements for maintenance in § 452.335.1. A trial court has broad discretion in determining the amount of maintenance; an appellate court will not interfere absent an abuse of discretion. *Colabianchi v. Colabianchi*, 646 S.W.2d 61, 66[8] (Mo. banc 1983). This court holds the trial court did not abuse its discretion in setting maintenance at $1,000 per month. This court further holds that no error of law appears in the maintenance award and an extensive discussion of that issue would have no precedential value. Accordingly, the maintenance award is affirmed in compliance with Rule 84.16(b)(5).

This court does not overlook Marc's assertion that the maintenance award "is conditional and a conditional order is void." From the argument portion of Marc's brief, we learn he is referring to the proviso in the judgment stating that if the twelve-month time limitation on maintenance is invalid, no maintenance should be ordered.

It appears to this court that the trial court included that proviso because the trial court was aware of cases such as *In re Marriage of Tappan*, 856 S.W.2d 362, 368[4] (Mo.App. S.D.1993), which hold that limiting maintenance to a fixed period of time is justified only where substantial evidence exists of an impending change in the financial condition of the parties, and that at a minimum there must be substantial evidence to support a reasonable expectation that such a change will occur. Such cases further hold that absent evidence that the financial prospects of the party receiving maintenance will improve in the future, no maintenance award for a limited duration should be entered; it should be of unlimited duration, the amount being subject to modification if such party's financial condition improves. *Id.* at [5].

At the time the trial court entered the judgment, the trial court had no way to know whether one or both parties would appeal. This court infers the trial court wanted an appellate court to understand that the trial court did not believe Vicki was entitled to perpetual maintenance, but only to $1,000 per month for twelve months. Accordingly, the trial court endeavored to ensure that if an appellate court held the twelve-month limitation invalid, Vicki would not receive maintenance in perpetuity. This court further infers that the trial court made the maintenance award non-modifiable for the same reason, i.e., to ensure Vicki would not receive perpetual maintenance.

It thus appears that the proviso Marc attacks is one the trial court inserted in the judgment for Marc's benefit. Inasmuch as Vicki has not appealed, this court need not decide whether the trial court was correct in limiting maintenance to twelve months. This court assumes Marc does not want this court to declare the twelve-month limitation void, thereby leaving Marc obligated to pay Vicki perpetual maintenance.

Another of Marc's complaints pertains to the $12,500 attorney fee award against him.

■ An award of attorney fees is within the discretion of the trial court. *Mehra*, 819 S.W.2d at 356–57[14]. This court holds the attorney fee award is supported by substantial evidence, is not against the weight of the evidence, and no error of law appears in the award. This court further determines that an extensive discussion of the attorney fee award would have no precedential value. Ac-

454

cordingly, the attorney fee award is affirmed in compliance with Rule 84.16(b)(1) and (5).

Marc's "Points on Appeal" contain several other complaints including allegations of erroneous evidentiary rulings by the trial court and misconduct by Vicki's lawyers.

As to the evidentiary rulings, this court finds no merit in any of Marc's complaints and further finds all such complaints are too meritless to warrant discussion.

The record contains no indication that any alleged misconduct of Vicki's lawyers affected the outcome of this case. That is all this court must decide in resolving this appeal. Furthermore, this court is not an agency charged with responsibility for investigating alleged misconduct by lawyers. Marc can present his complaints about Vicki's lawyers to the officials charged with that responsibility.

This court modifies the judgment by adding thereto the following provision regarding the $60,000 award to Vicki. As so modified, the judgment is affirmed. The added provision is:

"Said $60,000 shall bear interest from and after August 5, 1996, at the rate in § 408.040.1, RSMo 1994, and shall be payable in installments as follows. The first installment shall be due the date the mandate of the Missouri Court of Appeals, Southern District, is filed in the trial court. The first installment shall be in the amount of $12,000 plus all accrued interest since August 5, 1996. The second installment shall be due one year after the due date of the first installment. The second installment shall be in the amount of $12,000 plus all accrued interest since payment of the first installment. The third, fourth and fifth installments shall be due, respectively, two years, three years, and four years after the due date of the first installment. The third, fourth and fifth installments shall each be in the amount of $12,000 plus all accrued interest since payment of the preceding installment."

One more ruling is required to complete this opinion. Vicki filed a motion to dismiss the appeal and for damages against Marc for filing a frivolous appeal. The motion is denied.

Costs of this appeal are taxed against Marc.